### R. A. Wheeler v. The State.

#### No. 1114. Decided April 26, 1911.

#### Rehearing Denied May 17, 1911.

**1.—Forgery—Indictment—Character of Instrument.**

Where, upon trial of forgery, the written instrument described in the indictment was an unconditional promise to pay a sum of money, the time of payment being left to the date of demand, the same was an instrument upon which the charge of forgery could be based, and the court did not err in refusing to quash the indictment. See opinion for an instrument upon which forgery could be based.

**2.—Same—Instrument—Date of Payment—Pecuniary Obligation.**

The fact that the date of payment was not specifically fixed in the instru-

ment alleged in the indictment upon which the charge of forgery was based, but was payable on demand, etc., it was not so uncertain as not to create a pecuniary obligation, and was therefore the subject of forgery.

Appeal from the District Court of Bosque. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. P. Word* and *J. S. Bounds* and *R. Lyles,* for appellant.—The instrument upon which the indictment is predicated does not create a pecuniary obligation. There is no promise contained therein to pay any sum of money to any person, and no time fixed for the payment of the money. The instrument purports upon its face to be a statement of an agreement that had been reached between the appellant and J. J. Lumpkin, and recites that Lumpkin had agreed to give to Wheeler the sum of twelve hundred and thirteen dollars and twenty cents ($1213.20) at such time as he might make demand upon him to surrender to him the possession of 150 acres of land. If the instrument could ever have become a pecuniary obligation it would have only become so after demand for possession had been made, and the indictment fails to show by the allegation of extrinsic facts that the demand for the possession of the land had ever been made by Lumpkin of appellant, so that said indictment wholly failed to charge an offense against the law of Texas and should have been quashed. Carder v. The State, 35 Texas Crim. Rep., 105; Cagle v. The State, 39 Texas Crim. Rep., 109, 44 S. W. Rep., 1097; Huckaby v. State, 45 Texas Crim. Rep., 577, 78 S. W. Rep., 942.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with forgery. Upon a trial he was convicted and his punishment assessed at two years confinement in the penitentiary.

The testimony would show that in a sale of a 250 acre tract of land, certain vendor's lien notes were given as part purchase money. Dr. J. J. Lumpkin became the owner of the notes, by purchase before maturity. Defendant purchased 150 acres of the land, and assumed the payment of the notes unpaid. Dr. Lumpkin and defendant discussed a trade whereby defendant was to deed the land to Dr. Lumpkin, and Dr. Lumpkin was to convey to him a certain lot in Meridian, and pay a small sum of money. Defendant, in a statement introduced, claimed that Dr. Lumpkin decided not to convey the lot, but was to pay him $1213 and cancel notes in consideration of conveying the land to him. Dr. Lumpkin denies that such trade was ever made, or that he ever agreed to pay anything.

The alleged forgery is based on the following instrument:

"Meridian, Texas, Aug. 31, 1910.

"This is to certify that the deal on the one $1000 place is waived, and I have agreed to give to R. A. Wheeler Twelve Hundred and Thirteen Dollars and Twenty Cents ($1213.20) for his equity in the hundred and fifty acres that I have sued on out of the Calvin Stockbridge survey in Bosque County, Texas, but I will go forward with the suit and get the judgment against the land. The deed has been made and put of record. I will not dispossess him, neither will I cause him to be dispossessed of the land until the amount is given— the amount will be given him when the demand is made on him for possession of the 150 acres of land.

"(Signed) J. J. Lumpkin."

Defendant admits he wrote this instrument, and says Dr. Lumpkin signed it; that it is a genuine instrument. Dr. Lumpkin admits the signature, but says the writing was put above his signature without his knowledge or consent; that he had written defendant several letters, and he must have used one of them in writing the above over his signature. The body of the instrument is in different handwriting to that of the signature. The issues were properly submitted to the jury, and they found against the contention of defendant. Defendant, however, insists that the instrument is not such an one as that a charge of forgery can be based thereon.

It is admitted in the evidence that before the indictment had been returned, possession of the land had been demanded and taken, and defendant dispossessed, when the instrument, if ever, would become a legal obligation.

Our statutes defining forgery are broad and comprehensive, and embrace a number of acts. Article 530 of the Penal Code reads:

"He is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall made a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever."

Article 539 reads: "It is forgery to make, with intent to defraud or injure, a written instrument, by filling up over a genuine signature, or by writing on the opposite side of a paper so as to make the signature appear as an endorsement."

Article 550 reads: "Every person who falsely makes, alters, forges or counterfeits any instrument in writing, document, paper or memorandum, or file of any character whatsoever in relation to or affecting lands, or any interest in lands in this State, with the intent to make money or other valuable thing thereby, shall be deemed guilty of forgery.

There are four counts in the indictment, and they cover forgery

under the articles named. The instrument introduced in evidence is an unconditional promise to pay $1213.20, and the date of payment is fixed when possession of the land is demanded or taken. The fact that date of payment is not fixed specifically in the instrument, we do not think would make it so uncertain as not to create a pecuniary obligation as against Dr. Lumpkin. If the instrument were true, at any time Dr. Lumpkin sought to foreclose his vendor's lien notes, or sought to do any act to protect his rights, he must pay the amount stipulated.

In the case of Costley v. State, 14 Texas Crim. App., 156, it is held: "There can be no doubt but that a bail bond, executed for the appearance of a party to answer before the proper court an accusation against him of an offense against the law, is a pecuniary obligation to the State, binding upon him and his sureties, and is one which, by the very terms of the law permitting it, can be enforced in case of a breach of its conditions. (Code of Criminal Procedure, arts. 282 et seq., and arts. 400 et seq.) If an instrument in writing which creates a pecuniary obligation is a subject of forgery, then a bail bond is also such an instrument as may be the subject of forgery. (Penal Code, art. 435; Com. v. Linton, 2 Va. Cases, 476.) It is not necessary that a bail bond should have been forfeited or attempted to be forfeited before it is the subject of an assignment and prosecution for forgery, for 'an instrument falsely made with intent to defraud is a forgery, although, if it had been genuine, other steps must have been taken before the instrument would have been perfected, and these steps are not taken.' (Com. v. Costello, 120 Mass., 358.)" See also Morris v. State, 17 Texas Crim. App., 660; Dooley v. State, 21 Texas Crim. App., 550; Lassiter v. State, 35 Texas Crim. Rep., 540; State v. Gullette, 121 Mo., 456, and notes cited in 8 Am. St. Rep., 467. And in Cyc., vol. 19, page 1384, the rule is laid down in speaking of forgery: "A paper is not invalid on its face because certain steps have to be taken to give it complete legal effect, and those successive steps have not been taken," citing Com. v. Wilson, 25 Am. St. Rep., 528; Com. v. Costello, 120 Mass., 358; State v. Gee, 42 Pac., 7; Foute v. State, 15 Lea, 712, and other cases.

This instrument being an unconditional promise to pay, the time of payment being only left as to the date of demand, we hold that forgery can be based thereon, and the court did not err in refusing to quash the indictment.

There is but one bill of exceptions in the record, and there was no error in not permitting the defendant to prove certain transactions of Dr. Lumpkin in different matters some twelve years prior thereto, especially so in view of the language approving or qualifying the bill, which shows the testimony could not have been of any benefit to defendant.

The court gave special charge No. 2 requested by defendant, which

affirmatively presented defendant's contention, and there was no error in refusing to give the other special instructions requested.

The judgment is affirmed.

*Affirmed.*

[Rehearing refused May 17, 1911.—Reporter.]