**SOUTHERN BROKERAGE COMPANY,**
Appellant,

v.

**The AETNA CASUALTY AND SURETY**
CO., Appellee.

No. 4770.

Court of Civil Appeals of Texas.

Waco.

Jan. 16, 1969.

Rehearing Denied Feb. 13, 1969.

Martin, Harrison & Withers, Reagan M. Martin, Dallas, Harvey L. Davis, Dallas, for appellant.

Bailey, Williams, Weber & Allums, Lawrence R. Maxwell, Jr., Dallas, for appellee.

OPINION

McDONALD, Chief Justice.

Southern Brokerage Company sued Aetna Casualty and Surety Company on a

Brokers Blanket Bond to recover $7454.00 paid by Southern as a fee to attorneys who successfully defended a suit against it by one Duff M. Bigger. Both parties moved for summary judgment. The trial court granted Aetna's motion and rendered judgment that Southern take nothing.

Southern appeals on 4 points contending:

1) The trial court erred in not sustaining Southern's motion because as a matter of law, Southern is entitled to indemnity under Aetna's Brokers Blanket Bond.

2) The trial court erred in rendering summary judgment for Aetna because as a matter of law, Aetna is obligated to indemnify Southern under the provisions of the Aetna Brokers Blanket Bond.

Aetna's bond provides that Aetna "will indemnify the Insured against court costs and reasonable attorney's fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any *loss, claim or damage which if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond * * *"*.

■ To determine whether Aetna is liable for court costs and attorney's fees in a particular case, recourse must be had to the pleadings and papers in the suit which insured's attorneys defended, and thence to the lettered classes of loss in the bond. National Surety Corporation v. First National Bank of Midland, Tex., 431 S.W.2d 353.

The suit which Southern's attorneys defended was brought by Duff M. Bigger v. Bellmead State Bank, Waco; Republic National Bank, Dallas; Timothy H. Dunn; and Southern Brokerage. Bigger alleged in such suit that in February 1964 Bellmead State Bank loaned Dunn (and one Morton Bigger, Jr., ½ brother of Duff

Bigger) $43,982 and took their note for such; that plaintiff Duff Bigger (though in nowise liable on the note), made an accommodation pledge to Bellmead Bank of 400 shares of Southwestern Life Insurance stock, as security for the loan to Dunn and Morton Bigger, Jr. and delivered such stock in 2 certificates, (and further delivered two stock powers or assignments signed by plaintiff, with signature certified by Republic Bank) to Bellmead Bank. That on August 3, 1964 Dunn contacted Southern Brokerage and placed an order for it to sell 400 shares of Southwestern Life Insurance Company stock; that Southern on such date sold 400 shares of Southwestern Life Insurance Stock for $67,800; Dunn then became obligated to deliver 400 shares of Southwestern Life stock to Southern, and Southern became obligated to deliver to Dunn, $67,800, (less brokers commission). That on August 4, 1964 Dunn telephoned the president of the Bellmead Bank he had arranged for Republic National Bank of Dallas to make him a loan to take up his note at Bellmead Bank, and asked Bellmead Bank to forward the $43,982 note with a draft on Dunn and enclose the 400 shares of Southwestern Stock, to Republic Bank, attention of banker Stuart Aaron, and to mail the 2 stock powers or assignments signed by Duff Bigger, to Dunn at his home in Dallas.

In truth Dunn had made no loan arrangements at the Republic Bank and made the request of Bellmead Bank in order that the stock certificates would be mailed to the Republic Bank, with the draft on Dunn.

Plaintiff further alleged Bellmead mailed the stock certificate, and the note attached to its draft on Dunn for $45,225 to Republic Bank, and mailed the stock assignments signed in blank by plaintiff, to Dunn.

The draft arrived at Republic and Republic notified Dunn. Dunn then notified Southern to deliver its check for $67,548 (proceeds of selling the 400 shares of Southwestern) to Republic where it would receive the 400 shares of Southwestern.

Dunn requested Republic to receive the $67,548 check, honor Bellmead's draft for $45,225 on Dunn, and place the balance in Dunn's checking account; and Republic deliver the 400 shares of Southwestern stock to Southern; Dunn delivered the stock assignment signed in blank by Bigger to Southern, which caused the 400 shares of stock to be transferred to the purchaser.

Bigger plead that Dunn committed fraud; alleged all defendants guilty of conversion of his stock; and alleged the two banks guilty of negligence.

When Southern was served it tendered defense of the suit to Aetna which refused to defend asserting that no coverage existed under the Brokers Blanket Bond issued to Southern.

Southern employed attorneys and defended expending $7454. Trial resulted in judgment against Dunn and Bellmead. No judgment was rendered against Republic or Southern.

Pertinent provisions of the Bond are:

"Wherever used in this bond *Property* shall be deemed to mean * * * Securities * * * and all other Instruments to or in the nature of the foregoing, in which the Insured has an interest or which are held by the Insured for any purpose or in any capacity * * *"

"The losses covered by this Bond are as follows:

"Forgery or Alteration

"(D) Any loss through FORGERY or ALTERATION of, on, or in any bills of exchange, checks, drafts, acceptances, certificates of deposit, promissory notes, or other. written promises, orders or directions to pay sums certain in money, due bills, money orders, warrants, orders upon public treasuries, letters of credit, *written instructions or advices directed to the Insured, authorizing or acknowledging the transfer, payment, delivery or re-* *ceipt of funds or property,* which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution or stockbroker but which instructions or advices either bear the forged signature or endorsement, or have been altered without the knowledge and consent of such customer, banking institution or stockbroker, * * *"

We think a fair construction of the pleading wherein Bigger sued Southern, is that Bigger alleged that Southern converted Bigger's property as a result of Dunn's fraud; and as a further result of Dunn's delivery to Southern for attachment to the stock, of the stock assignment signed in blank by Bigger (with signature certified by the Republic Bank), when Dunn had no right or authority to do so.

■ The indemnity bond is strictly construed against the maker. United Service Automobile Ass'n v. Miles, 139 Tex. 138, 161 S.W.2d 1048.

■ Forgery may be committed by "filling up over a genuine signature". Article 992 Texas Penal Code; Wheeler v. State, 62 Tex.Cr.R. 370, 137 S.W. 124.

■ We think Bigger plead a cause of action against Southern wherein had Bigger prevailed, Aetna would have been liable under (D) (Forgery or alteration).

On the record before the trial court the trial court should have rendered judgment for Southern. Accordingly we reverse the judgment and here render judgment for Southern. Reversed and rendered.

### MEMORANDUM OPINION ON REHEARING

■ Forgery was also committed here under Article 984, Texas Penal Code.

Appellee's Motion for Rehearing is overruled.