**NATIONAL SURETY CORPORATION,**
Petitioner,

v.

**The FIRST NATIONAL BANK OF MIDLAND, Texas, Respondent.**

No. B-814.

Supreme Court of Texas.

July 17, 1968.

Rehearing Denied Oct. 2, 1968.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, James M. O'Leary and W. O. Shafer, Odessa, for petitioner.

Turpin, Smith, Dyer, Hardie & Harman, William C. Morrow, Midland, for respondent.

CALVERT, Chief Justice.

The First National Bank of Midland, Texas, sued National Surety Corporation on a Bankers Blanket Bond to recover the sum of $1,500 paid by Bank as a fee to attorneys who successfully defended a suit against it by one Mrs. Otis Beavers. Both parties moved for summary judgment. The trial court overruled National Surety's mo-tion, granted the Bank's motion, and rendered judgment in favor of the Bank. The court of civil appeals affirmed. 424 S.W.2d 27. We reverse the judgments of the courts below and render judgment that the Bank take nothing.

The Bank's right to recover must be found in the terms of the Blanket Bond issued to it by National Surety. Several of the provisions of the bond are quoted at length in the opinion of the court of civil appeals. Only the provisions deemed relevant to our decision will be quoted here.

In the opening insuring paragraph of the bond, National Surety agreed to indemnify and hold the Bank harmless "from and against any losses sustained and discovered as hereinafter set forth." The bond contains a number of subject-matter sections, one of which is headed, "THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:" Under this caption, the bond lists seven classes of losses in separate sections, lettered (A) through (G). The classes are "Fidelity", "Offices and Equipment", "In Transit", "Forgery and Alteration", "Securities", "Redemption of United States Savings Bonds", and "Counterfeit Currency". Immediately following the listed classes of losses in lettered sections, is an unlettered paragraph providing for reimbursement of court costs and attorneys' fees. It reads, in relevant part, as follows:

### "COURT COSTS AND ATTORNEYS' FEES"

(Applicable to all Insuring Clauses now or hereafter forming part of this bond.)

"The Underwriters will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured *to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the*

*Insured under the terms of this bond.* Such indemnity shall be in addition to the amount of this bond * * *."[1]

National Surety's application has four points of error which present two contentions why the Bank is not entitled to a recovery of the fee paid to its attorneys in the prior litigation. They are, (1) the bond covers only "losses", and the Bank suffered no loss on the claim of Mrs. Beavers, inasmuch as she was unsuccessful in her suit against the Bank; and (2) even if Mrs. Beavers had been successful in her suit against the Bank, the loss would, nevertheless, not have been "a valid and collectible loss" under the terms of the bond as required by the attorneys' fees provision. The court of civil appeals overruled both of these contentions. The questions presented by the two contentions are questions of pure contract interpretation, and are to be decided under well-known general rules applicable in such situations. Neither party has cited a case in which the questions are directly presented and decided or which we regard as controlling.

■ We can find no sound basis in the bond's provisions for holding that the insured must suffer an actual loss under one of the lettered classes of losses before being entitled to reimbursement for court costs and attorneys' fees incurred and paid in successfully defending against a claim, and every practical and reasonable interpretation of the bond's provisions point to an opposite conclusion. National Surety points to the fact that in the insuring clause it has agreed to indemnify only against "losses sustained and discovered * * *.", but this manner of looking at the whole clause would blind us to the phrase, "* * * as hereinafter set forth." The provision for reimbursement of court costs and attorneys' fees is listed under the bond's section which is captioned, "The losses covered by this bond are as follows." In other words, court costs and attorneys' fees incurred and paid by the insured are classified in the bond itself as "losses", and there is no language in the particular paragraph, or elsewhere in the bond, indicating that they are to be classified as losses only if they are incurred in unsuccessfully defending suits. Moreover, it makes little sense to say that National Surety has agreed to pay the insured's attorneys' fees when suits have been unsuccessfully defended and it has thereby been required to make heavy indemnity payments, but that it has not agreed to pay attorneys' fees when suits have been successfully defended and it has thereby been protected against heavy indemnity payments.

The second contention of National Surety presents a more difficult problem. National Surety has not agreed to pay insured's attorneys' fees in *all* litigation to which it may be a party, just as it has not agreed to pay all losses which the insured may incur in its banking business.

■ National Surety's liability for court costs and attorneys' fees is by the plain and unambiguous language of the bond very clearly limited to situations in which they are incurred in suits or legal proceedings in which *liability or alleged liability* of the insured, *if established, would constitute a valid and collectible loss under other loss provisions of the bond.* To determine whether National Surety is liable for court costs and attorneys' fees in a particular case, recourse must be had to the pleadings and papers in the suit which insured's attorneys defended, and thence to the lettered classes of loss in the bond.

Copies of the pleading of Mrs. Beavers in her suit against the Bank, its answer thereto, the Bank's motion for summary judgment, and the summary judgment rendered therein decreeing that the Bank be dismissed from the suit, are attached to the Bank's petition in this case and are incorporated in an affidavit filed by the Bank as summary judgment proof. A copy of Mrs. Beavers' pleading is also incorporated in an affidavit filed by National Surety as

---

1. Emphasis ours throughout unless otherwise indicated.

summary judgment proof. These instruments reflect that in 1957, the Crestview Baptist Church of Midland issued church improvement bonds, and that the Bank was appointed trustee and paying agent of the bonds by the terms of a trust indenture.

Mrs. Beavers, alleging that she was the owner of six of such bonds, each in the principal sum of $1,000, sued the Bank, Crestview Baptist Church and others, to recover $30.00 on each of twelve interest coupons which she alleged had matured but which the defendants had refused to pay. She also sought recovery of attorneys' fees in the amount of ten per cent on unpaid principal and interest. The petition then contained an alternative plea on the basis of which she sought recovery of the full amount of the principal of the six bonds and accrued interest thereon. The alternative plea presents the crux of this suit and we quote it in full, as follows:

"In the alternative, Plaintiff says that she has been told, and advised that said Defendants claim such bonds to be forgeries and counterfiet; notwithstanding the fact that such bonds bear proper and valid signature and in all respects appear to be regular. In this respect, Plaintiff, in addition to any rights she has to collect the proceeds of such bonds or coupons thereof, as an innocent purchaser for value; and not in any way admitting the grounds for refusal of payment of said bonds by said Defendant; Plaintiff says that, if, in fact such bonds are forgeries; that they are only partly forged, and in every respect appear to be valid and regular. That said Bonds were delivered in an unsigned printed state to Defendant, R. B. Cousins, who signed same as attorney for the Church, and then, delivered same to Defendant, First National Bank of Midland, for validation and issue. That Plaintiff believes that these Defendants did negligently mis-count said bonds in validating or signing same, and did negligently permit excess bonds to be issued, and did negligently allow partly validated bonds to come into the posses-

sion of a party who should not have had their possession, and did negligently permit said bonds to be accessable to parties other than the officers of said bank, or the officers of said church entitled to possession of same, and did, upon receipt of said bonds from R. B. Cousins, Defendant, negligently fail to check or count the number of same and to prevent excess bonds from being distributed; that each act or omission herein alleged to be negligence was a proximate cause of the acceptance by Plaintiff, an innocent victim, of the bonds in question and the consequent damages to her."

In its answer to Mrs. Beavers' petition, the Bank pleaded "that the bonds sued upon by Plaintiff are in fact counterfeit bonds, and that the signatures contained thereon are forgeries * * *." The Bank's motion for summary judgment and an affidavit of its Trust Officer attached thereto indicate that summary judgment was entered in its favor in the Beavers' suit because the summary judgment proofs established conclusively that the Bank had not been guilty of negligence in any respect in its handling of the bonds at the time of issuance. The record offers no explanation of why or on what ground the Bank sought and obtained its dismissal from the suit rather than a take-nothing judgment.

We now move to the lettered classes of losses in the Bankers Blanket Bond to see if in her suit Mrs. Beavers' *"alleged liability* on account of any loss, claim or damage *which, if established* against the Insured,"* would be subject to indemnification. The Bank recognizes that the liability alleged against it by Mrs. Beavers must have been subject to indemnification under section D, captioned "Forgery or Alteration", or under section E, captioned "Securities", or that it cannot sustain its recovery of attorneys' fees for defending the suit. Section D so obviously does not cover the liability of the Bank alleged by Mrs. Beavers that we will not examine it in detail.

The Bank contends that Mrs. Beavers' alternative plea alleged liability of the Bank in that it "acted upon" the bonds, which allegation, if established, would have caused it a loss subject to indemnification under section E. The only relevant part of section E, reads as follows:

### "SECURITIES"

"(E) *Any loss through the Insured's having*, in good faith and in the course of business, whether for its own account or for the account of others, *in any representative, fiduciary, agency or any other capacity * * * * purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise *acted upon any securities * * * which prove to have been counterfeit or forged as to the signature as to any drawer, issuer * * * or as to the signature of any other person signing in any other capacity * * *.*"

To sustain its recovery of attorneys' fees under the quoted language of section E, as we interpret it, the Bank was required to prove that Mrs. Beavers alleged that the Bank "acted upon" bonds which were counterfeit or forged, or were proved to have been counterfeit or forged, as to signatures *at the time it acted.* Giving to the alternative plea the most liberal interpretation of which it is susceptible, we find no such allegation.

The alternative plea insisted, in spite of the Bank's contrary claim, that the bonds bore "proper and valid signature"; but that if such bonds were forgeries, they were only "partly forged." The plea then alleged the signature of the attorney for the Church, R. B. Cousins, was genuine. The only part of the plea which may inferentially be said to have alleged that signatures on the bonds were forged, is that which stated that the Bank negligently allowed "partly validated bonds to come into possession of a party who should not have had their possession," and negligently permitted "said bonds to be accessable to parties other than the officers of said bank, or the officers of said church entitled to possession of the same." Even here, there is no allegation that the unknown parties coming into possession of the bonds forged any signatures on the bonds, or that thereafter the Bank "acted upon" the bonds by miscounting them or by permitting an excess number to be issued. We conclude that the plea did not allege liability of the Bank which, if established, would have caused it a loss subject to indemnification under section E.

The judgment in favor of the Bank must be reversed. Inasmuch as Mrs. Beavers' petition, the crucial instrument which controls the point at issue, cannot be changed, there is no sound basis for remanding the cause for trial. On the proofs before the trial court, National Surety's motion for a summary take-nothing judgment should have been granted. Accordingly, we reverse the judgment of the court of civil appeals and trial court and here render judgment that the plaintiff Bank take nothing.