The **AETNA CASUALTY AND SURETY COMPANY**, Petitioner,

v.

**SOUTHERN BROKERAGE COMPANY**, Respondent.

No. B–1439.

Supreme Court of Texas.

June 25, 1969.

Rehearing Denied July 30, 1969.

Bailey, Williams, Weber & Allums, James A. Williams, Dallas, for petitioner.

Martin, Harrison & Withers, Reagan M. Martin, Harvey L. Davis, Dallas, for respondent.

CALVERT, Justice.

In this suit by Southern Brokerage Company, plaintiff, to recover from The Aetna Casualty and Surety Company, defendant, a sum of money expended by the plaintiff as attorneys' fees and court costs in defending a prior suit against it, the trial court granted defendant's motion for summary judgment and rendered judgment that plaintiff take nothing. The court of civil appeals reversed the trial court's judgment and rendered judgment for Southern on its motion for summary judgment. 437 S.W.2d 316. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Southern's suit was founded upon a Brokers Blanket Bond, executed by Aetna, in which Aetna agreed to indemnify Southern against certain losses. One of the classes of losses for which indemnity was provided was "Court Costs and Attorneys' Fees", which provision reads in relevant part as follows:

"The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending *any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond.* Such indemnity shall be in addition to the amount of this bond. \* \* \*"[1]

We had occasion in National Surety Corp. v. First Nat. Bank of Midland, 431 S.W.2d 353 (Tex.Sup.1968) to interpret the foregoing provision as it appeared in the same language in a Bankers Blanket Bond. In that case we held that, to determine whether the insurer was obligated by the provision to indemnify an insured for court costs and attorneys' fees paid in a particular case, "recourse must be had to the pleadings and papers in the suit which insured's attorneys defended, and thence to the lettered classes of loss in the bond." 431 S.W.2d 353, at 355. The bond purchased from Aetna by Southern contains an agreement by Aetna to indemnify Southern against four lettered classes of losses, as follows: A, "Fidelity"; B, "On Premises"; C, "In Transit"; and D, "Forgery or Alteration".

■■ Southern alleged in its petition in this case that it was a defendant in a prior suit brought by Duff M. Bigger against Southern, Bellmead State Bank of Waco, Republic National Bank of Dallas and Timothy H. Dunn; that in the prior suit, the plaintiff asserted a cause of action against Southern on account of damage which, if established, would have constituted a valid and collectible loss sustained by it under the terms of the indemnity bond; that Aetna declined to defend the suit and Southern had employed counsel who successfully defended it against the claim asserted by Bigger; and that in its defense of the suit, it had incurred and paid court costs and attorneys' fees in the sum of $7,454.00. In its briefs in the appellate courts, Southern argues that the liability alleged against it by Bigger, if established, would have constituted a valid and collectible loss under coverages B, "On Premises", and D, "Forgery or Alteration". The court of civil appeals held that the alleged liability, if established, would have constituted a valid and collectible loss under coverage D. We disagree.

Coverage D reads in pertinent part as follows:

"D. Any loss through FORGERY OR ALTERATION of, on, or in \* \* \* written instructions or advices directed to the Insured, authorizing or acknowledging the transfer, payment, delivery or receipt of funds or property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution or stockbroker but which instructions or advices either bear the forged signature or endorsement, or have been altered without the knowledge and consent of such customer, banking institution or stockbroker \* \* \*."

According to the allegations in Bigger's petition, he was done out of 400 shares of Southwestern Life Insurance Company stock by a fraud perpetrated by the defendant Dunn who used the two banks and Southern as instrumentalities for carrying out his fraudulent scheme. Bigger pleaded in great detail a series of transactions which finally resulted in the sale of his stock by Southern and the delivery by

---

1. Emphasis ours throughout unless otherwise indicated.

Southern to Republic Bank, for the account of Dunn, of its certified check representing proceeds of the sale. We have examined the pleading with care. We can find no allegation in the petition which charges, directly or by reasonable inference, that Southern was liable to the plaintiff for the value of the stock because it honored or otherwise dealt with a written instrument which bore a forged signature or endorsement of a customer of Southern or of a banking institution or stockbroker, or which had been altered without the knowledge and consent of the customer, banking institution or stockbroker. To the contrary, Bigger expressly alleged altogether different legal theories on which he sought to impose liability on the various defendants. He concluded his detailed factual allegations with this sentence: "That the transaction in question was in all things an unauthorized use and disposition of your Plaintiff's said 400 shares of Southwestern Life Insurance Company stock by all Defendants herein *and is therefore a conversion.*" The plaintiff alleged, alternatively, that if he was mistaken in "his contention" that the transaction constituted *a conversion by the two banks*, then his loss was a direct and proximate result of several negligent acts or omissions by the banks. Finally, he alleged that the defendant Dunn had committed a fraud and should be required to pay exemplary damages.

Interpreting Bigger's petition liberally in favor of Southern, as we should, Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22 (Tex.Sup.1965), we, nevertheless, fail to find allegations which will support a recovery by Southern in this case on the theory that in his suit Bigger alleged liability for damage which, if established, would have constituted a valid and collectible loss by Southern under coverage D. We do not agree with the court of civil appeals' conclusion that the facts alleged in Bigger's petition will support a reasonable inference that he was charging one or more of the defendants with forgery. Articles 979, 984 and 992, Penal Code of Texas, define certain acts which constitute forgery. Article 979 defines forgery as the making of "a false instrument in writing purporting to be the act of another." Article 984 declares that a forgery is committed by the alteration of "an instrument in writing then already in existence." Article 992 declares that a forgery is committed by the making of "a written instrument, by filling up over a genuine signature, or by writing on the opposite side of a paper so as to make the signature appear as an endorsement." There are no allegations in Bigger's petition that any of the defendants in his suit committed any of the acts enumerated in Articles 979, 984 and 992. Southern suggests that Dunn committed a forgery by attaching the stock powers executed by Bigger to the stock certificates and delivering the same to Southern. Even if this act, if proved, would constitute forgery within the terms of the relevant articles of the Penal Code, which to say the least is doubtful, we can find no allegation in Bigger's petition that Dunn did the suggested act. Southern next suggests that it committed a forgery when one of its employees stamped its name on the stock powers containing Bigger's genuine signature. Again, we can find no allegation in Bigger's petition that Southern stamped its name on the powers, or that by virtue thereof Southern became liable to Bigger for damages.

■ Coverage B of the bond provides:

"B. Any loss of property through robbery, burglary, common law or statutory larceny, theft, hold-up, *or other fraudulent means*, misplacement, mysterious unexplainable disappearance, damage or destruction, abstraction or removal from the possession, custody or control of the Insured * * * *while the property is* (or is supposed to be) within any of the Insured's offices covered under this bond, or *within the offices of any banking institutions* or Clearing Houses wherever located. * * *"

Southern argues that recovery under coverage B is authorized because Dunn's fraud caused loss of Southern's certified check; and that "[t]he loss of Southern's certified check occurred in the office of the Republic National Bank when Southern's employee exchanged and transferred the check for the blank stock powers attached to the stock certificates." This argument might be entitled to consideration if Southern's suit against Aetna were for loss of its certified check; but its suit is not for loss of the check. The suit is for recovery of the money expended for attorneys' fees and court costs in Bigger's suit, and the money so expended may be recovered only if Southern's liability as alleged by Bigger would, if established, constitute a loss under coverage B. There is in Bigger's petition no semblance of an allegation that Southern became liable to him for his damages because Southern suffered a loss of its certified check when the check was exchanged at the Republic National Bank for his Southwestern Life Insurance Company stock certificates with stock powers attached. There is, therefore, no need to pursue an inquiry into the meaning of coverage B; or, to decide whether there was a "loss" of the check within the meaning of the coverage, as contended by Southern; or, if a loss, to decide whether it falls under a "trading" exception to liability contained in the bond, as contended by Aetna.

By a third counterpoint, Southern argues that the judgment of the court of civil appeals should be affirmed because Aetna's motion for summary judgment was fatally defective. Complaint is directed principally at an affidavit of Aetna's Claims Supervisor which, it is contended, shows that the affiant was not competent to testify to some of the matters set out in the affidavit, and that certain purported factual statements in the affidavit are nothing more than legal conclusions. The counterpoint is overruled. Attached to Aetna's motion for summary judgment are copies of Southern's petition in this case, Bigger's petition in his suit against Southern and others, and the bond executed by Aetna on which Southern's suit is based. These instruments demonstrate Aetna's right to summary judgment, and any defects in the Claims Supervisor's affidavit are immaterial.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.