**WHITE ROCK NATIONAL BANK OF DALLAS, Appellant,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, Appellee.**

No. 1095.

Court of Civil Appeals of Texas, Tyler.

Feb. 2, 1978.

Rehearing Denied March 3, 1978.

Michael W. Stucker, Brown & Stucker, Dallas, for appellant.

James A. Knox, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellee.

McKAY, Justice.

This is a suit on a banker's blanket bond. Appellant, White Rock National Bank of Dallas (the bank), brought suit against appellee, United States Fire Insurance Company (the bonding company), on an indemnity agreement for losses sustained by reason of a settlement paid and attorney's fees incurred by the bank as a result of a suit by a depositor against the bank on a contract and for negligence. Trial was to the court, and a take-nothing judgment was rendered against the bank, with the trial court holding that the bank's losses in the settled suit were not covered by the bond. The bank has brought this appeal.

It is necessary to set out the factual background which led to the present suit. One Morris Witt brought suit against the bank and Winston Freeman alleging that Witt and Freeman were contracting to buy a corporation named United Modular Home Corporation, and that in order to make such purchase Witt obtained $25,000.00; that Witt and Freeman went to the bank, conferred with the President, Jerry King, and advised King that they desired to open a bank account upon which there would be two signatures on all items of withdrawal, i. e. Witt's and Freeman's; that King agreed to the proposal for dual signatures on the account and instructed one of the employees to so make out the new account; that Witt wrote his personal check for $25,000.00 to the bank which was deposited to the account of United Modular Home Corporation; that contrary to the instructions given and the agreement with the bank Freeman withdrew $15,000.00 from the account without the signature or authorization of Witt, and some of the funds were withdrawn in cash and some transferred into Freeman's personal checking account, but none of it was used for Witt's benefit.

The bank notified the bonding company of the suit by Witt against the bank but the bonding company refused to defend the bank in the suit. The bank then settled the suit for $7,500.00, paid the entire amount itself, together with attorney's fees of $3,638.65. The instant suit by the bank against the bonding company followed. The bank alleges that its loss in settlement of Witt's suit was covered by the provisions of the contract or bond then in force between the bank and the bonding company. The provisions of the bond relied upon by the bank are as follows:

"FIDELITY

"(A) . . .

"ON PREMISES

"(B) Loss of Property (occurring with or without negligence or violence) through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious, unexplainable, disappearance, damage thereto or destruction thereof, and loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property,

"DEFINITIONS

"(b) 'Property' means money (i. e., currency, coin, bank notes, Federal Reserve notes), postage and revenue stamps, U. S. Savings Stamps, bullion, precious metals of all kinds and in any form and articles made therefrom, jewelry, watches, necklaces, bracelets, gems, precious and semiprecious stones, bond, securities, evidences of debts, debentures, script, certificates, receipts, warrants, rights, transfers, coupons, drafts, bill of exchange, acceptances, notes, checks, withdrawal orders, money orders, . . ."

"COURT COSTS AND ATTORNEYS' FEES
(Applicable to all Insuring Agreements now or hereafter forming part of this bond)

"D. The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond. . . ."

The trial court made findings of fact and conclusions of law as follows:

"FINDINGS OF FACT

"The Court finds:

"1. That the Plaintiff Bank sought to hold the Defendant Bonding Company liable by giving notice of a suit (*Morris Witt v. White Rock National Bank of Dallas and Winston Freeman,* numbered 73–5269–E pending at the time of settlement in the 101st District Court of Dallas County, Texas) against the Bank, tendering the suit for defense, and following Defendant's refusal to defend and assume responsibility therefor, later settling the case out of court; that apart from the notices of the suit, forwarding of copies of the pleadings and demands for defense, the Plaintiff made no other attempt to comply with the provisions of the bond with respect to giving notice and filing a sworn proof of loss; and that, therefore, the sole approach of the Plaintiff to making claim under the bond is by the contention that the said Morris Witt suit contained covered allegations and that the Defendant Bonding Company, though not a party to such suit, is effectively 'vouched in' and bound by the settlement and is further responsible for attorney's fees incurred because of its refusal to defend.

"2. That the pleadings, and particularly the Plaintiff's Second Amended Original Petition, in the said Morris Witt suit, clearly contained allegations of only two grounds of recovery, to-wit: negligence and/or breach of the true deposit agreement, and, accordingly, there are no allegations of liability against the Plaintiff Bank in the said suit, which if established against the Bank resulting in loss would constitute a valid and collectible loss sustained by the insured Plaintiff Bank under the terms of the bond.

"3. That the United Modular Homes Corporation account, opened in Plaintiff Bank, was a general checking account creating a debtor-creditor relationship between the Bank and the depositors, with no specific tangible property of the depositors being held by the Bank as bailee. Though opened as a corporate account, no corporation was ever acquired and there was no corporation so named in which Witt or Freeman had an interest.

"4. That both Winston Freeman and Morris Witt requested of the Plaintiff Bank, through its then president, Jerry King, that the account be opened as a dual signature account, but through a clerical error the account was opened and set up on the records of the bank as requiring only the single signature of either Freeman or Witt.

"5. That neither Witt nor Freeman had anything to do with causing the Bank to make the error in opening the account.

"6. That the account and depository agreement, as was intended by Witt and

Freeman, gave equal contractual rights in both intended signatories.

"7. That the Plaintiff had no knowledge during all relevant periods of who actually owned the deposit.

"8. That Freeman did not know of the Plaintiff Bank's error; at least, since the record is silent as to such knowledge, it must be presumed that he did not know.

"9. That Freeman was on the Bank's premises on two occasions, both times in the company of Morris Witt, and on neither occasion did Freeman make any false pretense, or commit any of the offenses listed under Insuring Clause (B) of the bond.

"10. That the Bank records show that certain transfers within the Bank and withdrawals from the United Modular Home Corporation account did occur, for whatever reason, pursuant to the single signature of Freeman.

"11. That the Plaintiff Bank suffered a loss by the settlement of the lawsuit, and did not suffer a loss of its tangible 'Property' [as defined in the bond] through a physical taking of such property from the Bank's 'premises' by and through false pretenses committed by Winston Freeman against the bank.

"12. That the producing cause of the Bank's loss was the liability or arguable liability on uncovered grounds and not any wrongful intent, had it been shown, of Winston Freeman.

"13. That the bond in question is unambiguous.

## "CONCLUSIONS OF LAW

"This Court concludes:

"1. That the bond is unambiguous in its terms.

"2. That a reasonable interpretation of the bond is that Insuring Clause (B) covers loss of tangible Property, as defined in the bond, physically taken from the premises of the Bank through one or more of the crimes or offenses committed against the insured Bank by the person charged.

"3. That the arguable liability of the Plaintiff Bank growing out of the alleged negligence and breach of contract in the Morris Witt suit constituted a remote, consequential and indirect loss to the Bank and does not constitute the loss of specific tangible property of the Bank, (in this case currency or coin) through or due to a covered crime or offense committed 'on premises' of the Bank.

"4. That the producing cause of the liability, if any, of the Bank to Morris Witt arose from the Bank's own negligence and/or breach of contract and not from any duty of the Bank to be aware of what was happening to funds withdrawn from the account.

"5. That the producing cause of the liability, if any, of the Bank to Morris Witt was the Bank's error and not any wrongful intent on the part of Winston Freeman, the Bank having no duty under the law to police the account and not being accountable to the true owner of the funds represented by the deposit for the misconduct, if any, of Winston Freeman.

"6. The bond in question does not cover losses due to the Bank's negligence or breach of contract.

"7. The United Modular Home Corporation account was a general account creating a mere debtor-creditor relationship between the Plaintiff Bank and the depositor.

"8. That certain contractual obligations were created upon the opening of the account, but the Plaintiff Bank had no duty to know who owned the money represented by the deposit.

"9. That the claim for attorney's fees must fail for the same reason as the claim for the amount paid in settlement, that is, the Morris Witt suit pleading contained no allegations which if proven true would have constituted a covered loss under the bond."

The bank brings fourteen points of error in each of which it complains that the trial court erred in making a certain finding of fact or a particular conclusion of law. It seems clear that the ultimate question presented, however, is whether under the

record here the loss claimed by the bank in settling the suit filed against it by Witt (and paying an attorney's fee for legal representation) was an obligation of the bonding company under the language of the bond.

When the deposit was made in the bank a printed form headed "Corporate Resolution," was signed in blank by Winston Freeman and Morris Witt, and above their signatures appeared the following: "And from which withdrawals are hereby authorized in the name of the corporation by any _1_ of the following: See below." It is undisputed that the bank was requested that the account be set up for dual signatures, and that Jerry King, bank president, agreed to do so and instructed a new account secretary accordingly. Apparently the new account secretary put a "1" in the blank on the form and when Freeman wrote checks on the account the bank records indicated his single signature was sufficient and was authorized.

■ It is the contention of the bank in its first point that the allegations in Plaintiff's Second Amended Petition in the *Morris Witt v. White Rock National Bank of Dallas and Winston Freeman* suit were within the coverage of the banker's blanket bond for the reason that a reasonable interpretation of such pleading reveals that the crux of such pleading was a cause of action arising out of the theft by Freeman, accompanied by the "negligence" of the bank. We do not agree with this contention.

To determine upon what grounds Witt sought recovery in his suit against the bank it is necessary to examine the pleadings and contentions of Witt as plaintiff there. The language of the Witt pleading against the bank with which we are concerned follows:

"Since that time there has been withdrawn from said account the sum of $15,-000.00 in funds, by Defendant Freeman only on the signature of Defendant Freeman, which funds . . . were taken by Defendant Freeman for his own uses and purposes, to Plaintiff's detriment.

"Because of the negligence of the Defendant bank in preparing the corporate resolution as indicated, and/or because said Defendant breached its agreement with Plaintiff to prepare the corporate resolution as indicated, Plaintiff has been damaged in the sum of FIFTEEN—THOUSAND ($15,000.00) DOLLARS, for which he sues."

It is seen from the quoted pleadings that Witt pled that the funds he sued for were taken by Freeman "for his own uses and purposes," and to Witt's detriment, and that the bank was guilty of negligence in erroneously preparing the corporate resolution, and that the bank breached its agreement to properly prepare such corporate resolution for dual signatures. Witt alleged that Freeman took the funds for his own uses and purposes without Witt's permission and to Witt's detriment. There is no allegation of theft or of false pretenses either on the bank premises or elsewhere. It seems clear that Witt alleged and intended to prove the true deposit agreement, and, alternatively, that the bank was negligent and that he suffered damage.

An examination of the bond indicates that it was not intended to, and does not, cover losses due to negligence or breach of contract. It covers certain listed classes of losses by which property may be lost (with or without negligence or violence), but these are specific and do not cover breach of contract or negligence by the bank in carrying out instructions of the depositor.

We believe the disposition of this case is controlled by *National Surety Corporation v. First National Bank of Midland,* 431 S.W.2d 353, 355 (Tex.1968). In that case a bank insured under a banker's blanket bond contended that a suit which the bank had successfully defended contained allegations of liability, which if established, would have caused it to suffer a loss subject to indemnification under one of the insuring clauses of the bond. The suit there was only for attorney's fees and court costs since there was a successful defense of the case, but the opinion seems to be clear that the bond underwriter's liability for the principal indemnity is to be examined in the same manner as liability for court costs and attorney's fees. We quote from the opinion.

"To determine whether National Surety is liable for court costs and attorney's fees in a particular case, recourse must be had to the pleadings and papers in the suit which insured's attorneys defended, and thence to the lettered classes of loss in the bond. (page 355)

.    .    .    .    .

"To sustain its recovery of attorney's fees under the quoted language of section E, as we interpret it, the Bank was required to prove that Mrs. Beavers alleged that the Bank 'acted upon' bonds which were counterfeit or forged, or were proved *to have been counterfeit or forged*, as to signatures *at the time it acted.* Giving to the alternative plea the most liberal interpretation of which it is susceptible, we find no such allegation. (page 357)

".    .    . We conclude that the plea did not allege liability of the Bank which, if established, would have caused it a loss subject to indemnification under section E. (page 357)

".    .    . Inasmuch as Mrs. Beavers' petition, the crucial instrument which controls the point at issue, cannot be changed, there is no sound basis for remanding the cause for trial." (page 357) [Emphasis theirs.]

See also the *Aetna Casualty and Surety Company v. Southern Brokerage Company,* 443 S.W.2d 45 (Tex.1969). Point 1 is overruled.

■ The bank attacks Findings of Fact 6, 7, and 3, and Conclusion 7 as being erroneous under the record. Argument is made by the bank that the undisputed evidence showed, contrary to Finding 6, that all the money deposited in the account was owned by Witt, and that it was the express intention of both Witt and Freeman that Witt retain control of the money. The bank further maintains that the trial court erred in Finding 7 that the bank had no knowledge of who actually owned the account because the undisputed testimony of Jerry King, bank president, established that he knew Witt owned all the money, and such

knowledge was imputed to the bank. The bank also contends that the trial court erred in finding and concluding that the account was a general checking account creating a debtor-creditor relationship between the bank and depositors. While we believe there is merit in the bank's contention that the above Findings 6 and 7 are not supported by the evidence in the record, we do not agree with the result arrived at by the bank's deductions, nor do we believe they govern the outcome of the case. The argument is made that since Witt's deposit was for the specific purpose of purchasing a corporation, and the bank president knew of such purpose and set up the account accordingly and styled it "Special Account," then Witt and the bank had the relationship of bailor and bailee, or trustor and trustee, or principal and agent, and the disbursement of Witt's money contrary to his express instruction to the bank requiring dual signatures constituted on premises theft of Witt's property within Clause B of the bond.

We do not agree that the deposit was a special deposit. It is said in *Citizens First National Bank of Tyler v. Cinco Exploration Co.,* 540 S.W.2d 292, 295 (Tex.1976):

"A 'special deposit' is the traditional designation of the bailment or agency or trust whereby the bank keeps or transmits identical property or funds entrusted to it. The usual creditor-debtor relationship does not arise. *Hudnall v. Tyler Bank & Trust Company,* 458 S.W.2d 183 (Tex.1970). In order for a 'special deposit' situation to exist, there must be an agreement between the depositor and the bank upon the use of deposited funds for a specific purpose. .    .    ."

Since there was no special deposit created under the record the relationship was that of debtor-creditor between the bank and the depositor. While the record indicates that the bank president, Jerry King, was told the purpose of the deposit was to buy a certain corporation there was no agreement between the bank and the depositor that

the bank would pay out the money only for that specific purpose. The designation of the account as "special account" does not make it a "special deposit". Nor do we agree with the conclusion of the bank that the result of Freeman's withdrawals from the account constituted theft from the premises. Points 13 and 14 are overruled.

By Points 4 and 11 the bank says the trial court erred in Finding 8 that Freeman did not know of the bank's error in establishing the account, and in Conclusion 5 that the bank failed to establish the requisite wrongful intent of Freeman in order to hold the bonding company liable under the bond. By its point 6 the bank maintains that the trial court erred in Finding 12 that its loss was not primarily caused by the theft of Freeman because the undisputed evidence showed that Freeman misappropriated the funds for his personal benefit. In points 9 and 10 the bank contends that the undisputed evidence established, contrary to Conclusion 3, that a loss of the bank property was in Clause B of the bond, and that, contrary to Conclusion 4, the evidence established that the loss was caused by misappropriation of funds by Freeman, and Clause B encompasses such losses regardless of any negligence attributed to the bank.

■ We have noted that in our view the deposit was a general demand deposit which created the relationship of debtor and creditor. In the absence of an agreement to the contrary, a bank is under a duty to honor its depositors' checks or orders, where there was sufficient funds of the depositor when checks are presented, regardless of the purpose for which the check is given. *Frost National Bank v. Nicholas & Barrera*, 534 S.W.2d 927 (Tex. Civ.App.—Tyler 1976, writ ref'd n. r. e.).

■ The bank's exposure to liability to Witt may be traced to its error in opening the account. Freeman had nothing to do with the bank's mistake nor does the record show that he knew of the mistake. The bank's argument seems to be that the mere act of Freeman of sending the bank checks through with single signatures constituted obtaining funds by false pretenses on the premises. We disagree. Freeman may have breached the true deposit agreement by so doing, but there was no physical taking of tangible property on premises. These points are overruled.

In our view we must return to our earlier premise that the bank's loss in settling the Witt suit must be measured by the allegations of Witt in his suit against the bank. We are of the opinion that the pleadings in the Witt suit control, and further that such pleadings, given a liberal interpretation, did not allege loss of property on premises as described and covered by Clause B. *National Surety Corp. v. First National Bank of Midland,* supra.

We have examined the bank's remaining points, and they are overruled.

Judgment of the trial court is affirmed.