CONTINENTAL SAVINGS ASSOCIA-
TION, Plaintiff-Appellant,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant-Appellee.

No. 84–1382.

United States Court of Appeals,
Fifth Circuit.

June 17, 1985.

As Amended on Denial of Rehearing
Aug. 12, 1985.

Lackshin & Nathan, Bernard Wm. Fischman, Lionel M. Schooler, Houston, Tex., for plaintiff-appellant.

Winstead, McGuire, Sechrest & Minick, Jeff Joyce, W. Mike Baggett, Dallas, Tex., for defendant-appellee.

Before GOLDBERG, RUBIN, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Continental Savings Association (Continental) sought indemnity for attorney's fees and court costs pursuant to the terms of a fidelity bond issued to Continental by the United States Fidelity and Guaranty Company (USF&G). The fees and costs were expended by Continental in defending an action for fraud brought by Fidelity Mortgage Investors (FMI). The district court denied relief, finding that Continental did not comply with the notice provisions of the bond. We reverse.

## I.

On May 13, 1974, FMI brought suit against Continental[1] in the state courts of Texas. FMI alleged that Continental had defaulted on a loan commitment originally executed in favor of Rockwall Estates, Inc., and later assigned to FMI in September 1971. The commitment was executed in July 1971 by the then President and part owner of Continental, James McPherson. McPherson sold his interest in Continental in February 1973.

In its state court action, FMI claimed that a commitment fee of $8,500, representing 1% of the amount of the commitment, had been tendered to and accepted by Continental through McPherson, thus satisfying the condition precedent to effectiveness of the commitment. Continental, having been unable to discover any record of receipt of the fee, denied liability. Sometime between May and July 1974, Continental gave USF&G oral notice, through counsel, of the pending action. However, in December of the same year, FMI took a nonsuit in its state court action and filed a similar action in United States district court. By the middle of February 1975, USF&G had obtained copies of the pleadings in the federal court action.

The complaint filed in the federal court action alleged, among other things, that FMI had been "defrauded" by Continental through the actions of its agent, McPherson. FMI sought over $2,000,000 in actual damages and $6,000,000 in punitive damages. After protracted litigation concerning jurisdictional issues, *see, e.g., Navarro Savings Association v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), and remand to the district court for trial, Continental prevailed on the merits. The jury found that the commitment fee had been diverted by McPherson and that consequently Continental had no obligation to fund the commitment. Continental then filed this action to recover attorney's fees and court costs under the fidelity bond issued by USF&G.

The district court was persuaded by USF&G's defenses which asserted that Continental failed to comply with the notice of loss provision and the notice of suit provision of the bond. We find no merit in these defenses.

## II.

The first portion of the fidelity bond, entitled "Insuring Agreements," contains USF&G's agreement to indemnify Continental for various losses "sustained ... at any time but discovered during the Bond Period," including, in paragraph (A), "Fidelity" losses which are "[l]oss[es] through any dishonest or fraudulent act of any of [Continental's] Employees." The second portion of the bond, entitled "General Agreements", provides, in paragraph C, for indemnity for attorneys' fees and court costs in the following language:

C. The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees *incurred* and paid by the Insured *in defending any suit or legal proceeding brought against the insured to enforce the insured's liability or alleged liability on account of any loss, claim or damage, which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond.* In the event such loss, claim or damage is subject to a Deductible Amount or is in excess of the amount collectible under the terms of this bond, such court costs and attorneys' fees shall be prorated. Such indemnity shall be in addition to the amount of this bond. *In consideration of this indemnity, Insured shall promptly give notice to the Underwriter of the institution of any such suit or legal proceeding;* at the request of the Underwriter shall furnish it with copies of all pleadings and other papers therein; and at the Underwriter's election shall permit the Underwriter to conduct the defense of such suit or legal proceeding,

---

1. The suit was actually filed against Navarro Savings Association, Continental's predecessor in interest. We will use Continental's name in referring to both entities.

in the Insured's name, through attorneys of the Underwriter's own selection.

(emphasis added). In addition, the agreements were subject to several exclusions and limitations, one of which provided as follows:

*Loss—Notice—Proof—Legal Proceedings.*

*Section 4.* This bond is for the use and benefit only of the insured named in the Declarations and the Underwriter shall not be liable hereunder for loss sustained by anyone other than the Insured unless the Insured, in its sole discretion and at its option, shall include such loss in the Insured's proof of loss. *At the earliest practicable moment after discovery of any loss hereunder the insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars.*

(emphasis added). A rider to the bond was appended modifying Section 4, the proof of loss provision, in the following language:

Anything in the attached bond to the contrary notwithstanding, proof of loss shall be given in accordance with sub-section (a) as hereinafter set forth ...:

(a) Filing of Claim: Within 100 days after discovery of loss under said bond by the Insured or, if a corporation, by any director thereof or by any officer thereof not in collusion with the person in default, the Insured shall furnish to the Underwriter, affirmative proof of loss with full particulars in writing, including dates and items of loss, duly sworn to.

USF&G first asserts that the potential loss, namely, FMI's claim for damages against Continental, is not a "valid and collectible loss ... under the terms of [the] bond", as required by paragraph C, since it does not fall within the "Fidelity" paragraph of the "Insuring Agreements." The district court held to the contrary, finding that FMI's claim, "if established against [Continental]," would have constituted a "valid and collectible loss." For the reasons set out below, we agree.

First, an argument similar to that made by USF&G was rejected by this Court in *First National Bank of Bowie v. Fidelity & Casualty Co.,* 634 F.2d 1000 (5th Cir. 1981). There, relying on a bond whose provisions were identical in every pertinent respect to that issued to Continental here and applying Texas law, we held that "the lawsuits at issue all asserted claims which, if established against the Bank, would have been indemnified under the fidelity clause of the Bond." *Id.* at 1004. The lawsuits in issue in *Bowie* alleged that a director and the president of the insured bank had conspired to defraud various third parties through a "check kiting scheme." Similarly, FMI's action alleged fraud perpetrated on it by the president of Continental.

Despite its inability to cite pertinent distinctions between *Bowie* and the case before us, either in terms of the provisions of the bonds or the thrust of the underlying lawsuits, USF&G argues that the law in Texas "should" absolve it from indemnity liability for indirect losses to the insured, that is, losses sustained in litigation brought by third parties defrauded by the insured's employee.[2] However, besides be-

---

**2.** In support of its normative vision of Texas law, USF&G cites *Ronnau v. Caravan Int'l Corp.,* 205 Kan. 154, 468 P.2d 118 (Kan.1970), and *Omaha Bank for Cooperatives v. Aetna Cas. & Sur. Co.,* 207 Neb. 782, 301 N.W.2d 564 (1981). However, *Ronnau,* in which a judgment creditor of the insured sought to garnish the amount of the judgment held by the insurer, is of no help to USF&G. The Kansas Supreme Court held that since the insured had paid no portion of the judgment, it had sustained no loss and, consequently, the insurer's indemnity liability was not triggered. Neither the recovery of fees and costs, nor an indemnity provision for such, was in issue.

In *Omaha Bank,* the Nebraska Supreme Court, over a strong dissent, imputed the fraudulent act of the insured's employee to the insured for the purpose of following a line of Nebraska cases that denied indemnity coverage for losses due to the insured's own negligence. No similar strain of Texas precedent having been brought to our attention, we decline to follow the Nebraska court, which appears to have reached a result contrary to *Bowie.*

ing convinced and bound by the reasoning in *Bowie*, we cannot read the language of the bond to support USF&G's position.

While not lucidly drafted, paragraph C, at least clearly encompasses the situation at hand. Under paragraph C, the insured's liability must be "on account of any loss claim or damage" and must, if established, "constitute a valid and collectible loss under the terms of [the] bond." Clearly, Continental's liability, arising from the action in which it incurred the litigation expenses it now seeks to recover under the bond, would have been "on account of [a] ... claim", namely, a claim by FMI for $8,000,-000 in damages for failure to fund the loan commitment. Continental's liability, however, must also, if established, "constitute a valid and collectible loss under the terms of [the] bond." One such collectible loss is found in Insuring Agreements, paragraph (A), "[l]oss through any dishonest or fraudulent act of the Employees." Continental's potential liability to FMI, had it obtained, would clearly have been a loss of this type and thus would have "constitute[d] a valid and collectible loss under the terms of [the] bond." Neither the terms of the bond nor the law of Texas requires that the insured suffer an *actual* collectible loss, only that it at least be threatened with a *potential* collectible loss. *See National Surety Corp. v. First National Bank of Midland*, 431 S.W.2d 353, 357 (Tex.1968) (no actual loss to insured is necessary). Hence, Continental may recover expenses incurred in fending off that potential liability if it complied with the notice requirement.

III.

■ Concerning notice, paragraph C requires only that the insured "promptly give notice to the Underwriter of the institution of" suit. There is no writing requirement and there is no requirement that pleadings be submitted to USF&G except upon request. Under Texas law, similar phrases, such as "as soon as practicable" or "immediately," require only that notice be given within a reasonable time in light of the circumstances involved. *McPherson v. St. Paul Fire & Marine Insurance Co.*,

350 F.2d 563, 566 (5th Cir.1965); *Pioneer Casualty Co. v. Blackwell*, 383 S.W.2d 216, 219 (Tex.Civ.App.—Waco 1964, writ ref'd n.r.e.). While generally a question of fact, reasonableness becomes a question of law if the facts are undisputed. *McPherson*, 350 F.2d at 566; *Klein v. Century Lloyds*, 154 Tex. 160, 275 S.W.2d 95, 97 (1955).

■ FMI instituted the state court action on May 13, 1974. Sometime before July 17, 1974, the record is no clearer, Continental orally notified USF&G of the pending action. Having heard no serious argument to the contrary, we hold that this was within a reasonable time under the circumstances. Once it had notice of the state action, USF&G was able to monitor its development closely, even as it was nonsuited and refiled in federal court in December 1974. Thus Continental complied with the notice provision of the bond and it may recover of USF&G reasonable attorney's fees and court costs incurred in defending the FMI action.

■ USF&G argues that since FMI did not allege the fraud or dishonesty of McPherson in the state court action (it clearly did in the initial complaint in federal court), that portion of attorney's fees expended by Continental in defense of that action is not recoverable from USF&G. FMI's initial state court complaint alleged merely that Continental breached the loan commitment after FMI had complied with all its terms, presumably including payment of the commitment fee. The district court found that all fees expended by Continental, including those expended in the state court, were recoverable. We agree.

In Texas, the contractual duty to defend "is determined solely from the face of the pleadings and without reference to facts outside the pleadings." *Rhodes v. Chicago Insurance Company*, 719 F.2d 116, 119 (5th Cir.1983); *Heyden Newport Chemical Corp. v. Southern General Insurance Co.*, 387 S.W.2d 22, 24 (Tex.1965). The duty arises when a third party sues the insured on allegations that, if taken as true, *potentially* state a cause of action within the terms of the policy. *Rhodes*, 719 F.2d at 119; *Heyden*, 387 S.W.2d at 25, 26. How-

ever, in applying this pleadings only rule, the court may indulge the most liberal interpretation of the allegations of which they are susceptible and doubts as to the import of the allegations are to be resolved in favor of the insured and coverage. *Heyden,* 387 S.W.2d at 26; *National Surety Corp. v. First National Bank of Midland,* 431 S.W.2d 353, 357 (Tex.1968).

We observe that there was no contractual *duty to defend* here; provision of defense was left to USF&G's sole discretion. There was only a contractual duty to pay attorney's fees and court costs after the fact. Thus Texas' somewhat restrictive "pleadings only" rule is arguably not applicable here. Nonetheless, assuming without deciding that Texas courts would apply this rule in the context we have encountered, there being no Texas precedent construing a similar provision, we think the fees recoverable.

While FMI's state court petition primarily alleges breach of contract, it does not exclude the "potentiality", *see Heyden,* 387 S.W.2d at 26, that the basis of the breach was McPherson's "dishonest or fraudulent act" (embezzling the commitment fee), a covered loss.[3] We do not read the Texas rule as requiring that the pleadings explicitly allege facts amounting to fraud. Thus, even under Texas' (somewhat liberal) construction of its restrictive "pleadings only" rule, USF&G's fees and costs obligation was triggered by the state court action. Attorney's fees expended in prior investigation of that action, as the district court found, would also be recoverable. There is no challenge to the reasonableness of the amount of fees thus expended. We therefore affirm the district court's finding that all fees and costs expended, totaling in excess of $114,000, are recoverable. On

remand, judgment should be entered accordingly.

■ We are left only to observe that the proof of loss provision, section 4 of the Conditions and Limitations, *see supra,* and the attendant notice requirement stated in the August 1971 rider, *see supra,* are not in issue. These provisions merely impose conditions on the filing of a claim for indemnifiable loss under the bond, not on a claim for expenses incurred in defending against liability for a loss or claim. Here, Continental sought only the latter. Compliance with the proof of loss and notice provisions was therefore unnecessary.

### IV.

■ In retreat, USF&G seeks sanctuary in the proration clause of paragraph C, which provides: "In the event such loss ... is in excess of the amount collectible under the terms of this bond, such court costs and attorney's fee shall be prorated. Such indemnity shall be in addition to the amount of this bond." We think the clause, inapplicable to the situation at hand, offers USF&G no solace.[4]

USF&G argues that the proration clause is triggered when a third party merely demands of the insured an amount greater than the amount of the bond (here, $510,-000). Thus, it argues, since FMI sought damages in excess of $8,000,000, Continental is entitled to recover only those attorney's fees expended that bear the same relation to the total expended (approximately $114,000) as the amount of the bond ($510,000) bears to the amount claimed by FMI ($8,000,000). This would amount to a recovery of little more than 6% of the total fees expended. USF&G, on this basis, finds ambiguity in the provision and asks

---

**3.** An internal memorandum, written in July 1974 by a USF&G claims agent, makes clear that even at the inception of the state court action USF&G was aware that the basis of FMI's complaint was the possible fraud of McPherson. The Texas "pleadings only" rule, however, renders this fact irrelevant.

**4.** The district court found it unnecessary to reach this issue. While it is sometimes advisable for courts of appeal to abstain from deciding an issue on which the lower court has had no

occasion to rule, *see, e.g., Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970), the issue before us is a purely legal one, concerning only the interpretation of a contractual provision. *See, e.g., Am. Standard Life Ins. Co. v. Redford,* 139 Tex. 138, 337 S.W.2d 230, 231 (Austin 1960, writ ref'd n.r.e.). Hence, we think it most efficient to dispose of the issue promptly, thus truncating the subsequent development of this case.

us to construe it in its favor. However, the language cannot be tortured so as to yield either legal ambiguity or USF&G's strained construction.

Under Texas law, the court is to decide, in the first instance, whether, as a matter of law, ambiguity lurks in the language of an insurance contract. *Entzminger v. Provident Life & Accident Insurance Co.*, 652 S.W.2d 533, 536 (Tex.Civ.App.—Houston [1st Dist.] 1983, no writ) (citing *Melton v. Ranger Insurance Co.*, 515 S.W.2d 371, 373 (Tex.Civ.App.—Ft. Worth 1974, writ ref'd n.r.e.)). Furthermore, "ambiguity in the terms of an insurance contract occurs when there are two or more inconsistent interpretations, *both of which are fair and reasonable.*" *Entzminger*, 652 S.W.2d at 535–36 (citing *Cabell v. World Service Life Insurance Co.*, 599 S.W.2d 652, 654 (Tex. Civ.App.—Texarkana 1980, writ ref'd n.r. e.)) (emphasis added). We think the quoted provision unambiguous because susceptible of only one reasonable and fair interpretation.

The interpretation offered by USF&G is neither fair nor reasonable. The logic of it is that the higher the damages claimed against the insured, the lower USF&G's obligation to defend. The language of an insurance contract should be interpreted to effectuate what it is reasonable to suppose was the intent of the parties in agreeing to it. *National Surety Corp. v. Western Fire & Indemnity Co.*, 318 F.2d 379, 386 (5th Cir.1963). Far from expressing a reasonable estimate of the parties' intent, USF&G's tendered interpretation would make a mockery of the fees and costs indemnity provision. Contract provisions should be interpreted so as to avoid meanings that produce unreasonable, oppressive, or absurd results in favor of meanings that render the operation of the contract fair and reasonable. *King v. Brevard*, 378 S.W.2d 681, 683–84 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.); *Hicks v. Smith*, 330 S.W.2d 641, 646 (Tex.Civ.App.—Ft. Worth 1959, writ ref'd n.r.e.). Continental's interpretation, both fair and reasonable, duly heeds these firmly established principles.

The quoted provision expressly states that indemnity for attorney's fees and court costs "shall be in addition to the amount of this bond." Thus, the amount of the bond places no constraints on the recoverable amount of fees and costs except when the proration clause is triggered. The only reasonable reading indicates that the clause is triggered only if the insured actually seeks primary indemnity for "loss, claim or damage" under the bond, e.g., if a third party has actually recovered from the insured damages that qualify as a covered loss, and the amount exceeds the amount of the bond. In that case, the fees and costs would be prorated in proportion as the amount actually recovered exceeds the amount of the bond. Having succeeded in the FMI litigation, Continental filed no such primary claim for indemnity; it sought only fees and costs in an amount below the amount of the bond. Consequently, the proration clause was never triggered and Continental is entitled to the full amount of fees and costs expended. *See supra* part III.

For these reasons the judgment is reversed and the case remanded to the district court for proceedings consistent with this opinion.

REVERSED AND REMANDED.