Jennifer Holly ENTZMINGER, et al., Appellants,

v.

PROVIDENT LIFE & ACCIDENT INSURANCE CO., Appellee.

No. 01–82–0446–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 5, 1983.

B. Lee Ware, Houston, for appellants.

Jeffrey S. Wolff, Houston, for appellee.

Before SMITH, DUGGAN and LEVY, JJ.

## OPINION

DUGGAN, Justice.

Appellants are beneficiaries under a life and accidental death insurance policy issued by the appellee insurance company. They appeal the district court judgment, based on jury answers to special issues, which denied them the accidental death portion of the policy's benefits following the insured's death in an Air National Guard airplane crash.

Six of their seven points of error center on the construction and application of an aviation exclusion clause in the accidental death portion of the policy. Appellee, Provident Life and Accident Insurance Company, paid $25,000 in life insurance proceeds to the beneficiary appellants, the insured deceased's minor children, Jennifer Holly Entzminger, and Heather Lin Entzminger, represented by their mother and next friend, Nanette Entzminger. However, appellee declined to pay the $25,000 accidental death indemnity on the grounds that the insured's fatal air crash was expressly excluded under the terms and conditions of the policy. The appellants brought suit to recover the accidental death benefit, statutory penalties, interest, and attorneys' fees.

Dr. Lindell B. Entzminger, Jr., was a participant in a group life and accidental death policy issued by the appellee and sponsored and approved by the American Medical Association. The policy provided for payment of $25,000 in life insurance coverage in the event of Dr. Entzminger's death and included as accidental death benefits the additional amount of $25,000 if he were to die of accidental causes.

In addition to practicing medicine in his civilian life, Dr. Entzminger was a major in the Texas Air National Guard and served as a flight medical officer, or flight surgeon, attached to the 111th Fighter Intercept Squadron stationed at Ellington Air Force Base. Part of the doctor's duties included logging a minimum number of "sorties" or missions in military aircraft each month.

On February 18, 1976, Dr. Entzminger died in the crash at Ellington of a T–33 aircraft in which he was one of two occupants. The pilot, Major Otis L. Finkelman, had sixteen to seventeen years' experience as a fighter pilot and some 3,000 hours of military flight time. Major Finkelman presumably intended to fly the airplane to a predetermined coordinate to serve as a simulated enemy aircraft for medium altitude radar tracking by an F–101 fighter interceptor aircraft. The aircraft crashed immediately after takeoff.

In their first three points of error, the appellants argue that the exclusionary provision in question is ambiguous and does not give fair notice of what is excluded from coverage, and that the court erred in overruling their motions for instructed verdict and for judgment non obstante verdicto, and in rendering judgment for the appellee insurance company.

The appellee insists, by a reply point, that the appellants waived their right to raise the issue of ambiguity at trial by failing to plead it. It is generally true that one seeking to establish ambiguity under a written contract must specifically plead such ambiguity. *Crozier v. Horne Children Maintenance and Educational Trust,* 597 S.W.2d 418 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). An exception to this pleading requirement applies when the plaintiff challenges the applicability of an exclusion of coverage under an insurance policy. Rule 94 of the Texas Rules of Civil Procedure provides, in relevant part:

> Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract
> . . . .

(Vernon 1979). An insured is not obliged to plead that the loss resulted from a cause not excluded by the policy since Rule 94 places the duty upon the insurance carrier to plead the exclusion it relies upon. *National Union Fire Insurance Co. v. Cox,* 393 S.W.2d 939, 941 (Tex.Civ.App.—Houston 1965, no writ). The party seeking to recover benefits under the policy then has the burden to prove that the loss did not come within the exception from liability raised by the insurer. *Id., Golden State Mutual Life Insurance Co. v. White,* 374 S.W.2d 901, 906 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.); *Merryman v. Employers National Life Insurance Co.,* 416 S.W.2d 609 (Tex.Civ.App.—Beaumont 1967, writ ref'd n.r.e.). Thus, the appellants were not required to reply to the appellee's first amended answer, which alleged the aviation exclusion as an affirmative defense, in order to move for judgment on the ground of ambiguity of the exclusion. *National Life and Accident Insurance Co. v. Green,* 477 S.W.2d 689 (Tex. Civ.App.—Waco 1972, no writ).

The appellants take the position that the language of the exclusion is capable of several inconsistent interpretations, some of which would exclude recovery and at least one of which would allow recovery. Therefore, they argue, the exclusion is ambiguous as a matter of law, and that interpretation affording recovery should prevail.

It is undisputed that language in an insurance provision is ambiguous if it is uncertain which of two or more meanings was intended. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *Standard Fire Insurance v. Griggs,* 567 S.W.2d 60, 63 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). More specifically, ambiguity in the terms of an insurance contract occurs when there are two or more inconsistent interpretations, both of which are fair and reasonable. *Cabell v. World Service Life Insurance Co.,* 599 S.W.2d 652, 654 (Tex.Civ.App.—Texarkana 1980, writ

ref'd n.r.e.). When ambiguity is determined to exist, ambiguous language is then construed in favor of the insured. *Glover v. National Insurance Underwriters,* 545 S.W.2d 755, 761 (Tex.1977); *General American Indemnity v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960); *Southwestern Life Insurance Co. v. Rowsey,* 514 S.W.2d 802, 805 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.) (aviation exclusion). But the court must first determine as a matter of law whether there is an ambiguity, *Melton v. Ranger Insurance Co.,* 515 S.W.2d 371, 373 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.), and plain, clear and unambiguous language of a policy must be given such meaning as will carry out and effectuate the intention of the parties; only where there is uncertainty as to the meaning of the contract, or a portion thereof, will rules of construction be applied. *Paul Revere Life Insurance Co. v. First National Bank in Dallas,* 359 F.2d 641 (5th Cir.1966); *Glover, supra.*

The exclusion in question reads:

> No Accidental Death and Dismemberment Insurance will be payable for any loss caused directly or indirectly, wholly or partly by:
>
> . . . .
>
> 2. flight in an aircraft operated for any training or testing or experimental purpose . . . .

The appellants agree that this exclusion was intended to limit risks associated with aviation or flight. It does not relate to the status of the insured, *e.g.,* whether he was a passenger or crew member, or to any qualification required of the pilot, *e.g.,* that he be licensed or experienced, or to the type of aircraft involved, *e.g.,* civilian or military. Instead, coverage is denied when the loss is caused by "flight in an aircraft operated for any training . . . purpose." ·

First, the appellants suggest that ambiguity exists in the language of the exclusion because the phrase "any training . . . purpose" could conceivably mean the unintended exclusion of coverage for an insured group traveling by chartered airplane for the purpose of study or "training" in some

discipline unrelated to aviation. This theory contradicts the appellants' earlier recognition of the irrelevance of the insured's purpose on board. Conceding that the exclusion is intended to be read as applying to "flight in an aircraft operated for any [aviation] training . . . purpose," the appellants next insist the term "[aviation] training" is ambiguous because it can refer to student flight as well as proficiency flying by an experienced pilot to prevent loss of skills. They propose that the former definition should apply; this, then, would take the death of the insured outside the scope of the exclusion.

■ To accept this theory would be to say that words which can be given a specialized, narrow definition, in addition to a generally accepted, broad definition, are ambiguous as a matter of law. The law in Texas is clear that terms used in insurance provisions are to be given their plain, ordinary, common meaning, unless the policy itself shows them to have been meant in a technical or different sense. *General American Indemnity Co. v. Pepper, supra,* at 662.

■ The only language logically bearing on the question of coverage in this instance is that contained in the exclusionary provision, and those words are not susceptible to two or more inconsistent meanings. The policy plainly excludes liability for loss resulting from "flight in an aircraft operated for any training . . . purpose." "Train" means to form by instruction, discipline, or drill; to teach so as to make fit, qualified, or proficient; to make prepared for a test of skill. *Webster's New Collegiate Dictionary* (1981). The participial phrase "operated for any training . . . purpose" modifies the noun "aircraft." Any flight by the insured in an aircraft being flown for the purpose of aviation training is, therefore, a risk not covered. In the absence of a policy definition showing that the parties intended that the term "training" be used in the limited or restricted sense suggested by the appellants, we must accord the term its customary and generally understood meaning and conclude that the provision applies,

as stated, to "any" aviation training purpose.

In summary, no uncertainty exists as to the kind of flight excluded from coverage by the language of the policy. The exclusion is clear and unambiguous and provides fair notice of what is excluded as a matter of law.

Appellants' points of error one, two, and three are overruled.

 The appellants' fourth point of error urges that the evidence "conclusively showed" that Dr. Entzminger was not killed as a result of "excluded aviation training". Appellants' fifth point of error asserts that there was "no evidence that [the insured] *was* killed as a result of excluded aviation training" [emphasis added]. This "no evidence" point is without merit because the burden of proof rested upon the appellants to prove that the insured's death *was not* caused by the excluded event, i.e., not caused by flight in an aircraft operated for training purposes. The appellee, having pled the exclusion as an affirmative defense under Rule 94, *supra,* had no duty to prove that the insured *was* killed within the scope of the exclusion. *Merryman, supra,* at 610; *Golden State, supra,* at 906. Appellants' fifth point of error is overruled.

Alternatively to the fourth and fifth points of error, appellant's sixth point of error asserts that the trial court erred in rendering judgment for the insurer because the exclusion is not a military aircraft exclusion.

Appellants argue that if the exclusion is found to be clear and unambiguous, and if it is read in accord with its plain, ordinary meaning, then the phrase "any training . . . purpose" must refer only to extraordinary and extrahazardous flights. This is so because there are only three kinds of military aviation: combat flight, student flight, and proficiency flight. Combat flight is excluded from coverage by another of the policy's exclusionary provisions. If all student flight and all proficiency flight were also intended to be excluded, the policy would, in effect, exclude all military flight. The

appellee insurance company's own representative testified that the policy was not meant to have a military exclusion. Hence, the flight meant to be excluded must be extraordinary or extrahazardous flight. Appellants urge that additional support of this proposition is seen in the grouping of the adjectival words of the entire exclusion clause: "flight in an aircraft operated for any *training* or *testing* or *experimental* purpose". [Emphasis added]. All three excluded activities connote extraordinary or extrahazardous use of the aircraft. By contrast, they assert that witness testimony established the mundane nature of the flight during which Dr. Entzminger was killed. Thus, they conclude, he was not killed as a result of an excluded training flight.

 This attempt to shore up logically the appellants' position fails for several reasons. First, testimony of the insurance company's employee cannot be allowed to contradict the clearly stated intention of the parties shown in the contract. *Huddleston v. Fergeson,* 564 S.W.2d 448, 452 (Tex. Civ.App.—Texarkana 1978, no writ). Where no ambiguity exists, parol evidence is not admissible to create an ambiguity. *Eggert v. American Standard Life Insurance Co.,* 404 S.W.2d 99, 104 (Tex.Civ.App. —Corpus Christi 1966, no writ). The policy exclusions would, therefore, encompass the risks of military flight, in spite of appellee's employee's testimony to the contrary, if military flight consisted only of combat, student, and proficiency flight. However, one of appellants' own witnesses described another type of military flight; he testified that the military has a separate classification for aircraft operated for transport purposes.

 Third, when policy language is clear and plain, the court will not create a new contract for the parties by arbitrary judicial construction, *Melton, supra,* at 373, or by a strained, unnatural or technical interpretation, *First National Bank of Midland v. Protective Life Insurance Co.,* 511 F.2d 731, 733 (5th Cir.1975).

 Finally, the most compelling rebuttal to appellants' posture is the overwhelming evidence in the record proving that Dr. Entzminger was in fact participating in a flight operated for training purposes at the time of his death. It is undisputed that he was a crew member in a T–33 aircraft which crashed during a medium altitude target intercept mission. The runway supervisor on the night of the accident testified that two separate aircraft, the T–33 and an F–101, comprised this particular mission. The T–33 is a two-seater jet aircraft with full cockpit instrumentation in both the pilot's seat and the seat occupied by Dr. Entzminger, directly behind the pilot. Before a target intercept mission begins, all crew members are required to receive a thorough briefing so that they are familiar with the mission, the altitude to be flown, and the type of intercept to be executed. The briefing chart for this particular flight indicated that all mission crew members were fully briefed.

The objective of the T–33 during the sortie was to perform evasive maneuvers simulating the actions of an enemy aircraft. The interceptor aircraft, the F–101, using airborne and ground radar, was to simulate firing radar "missiles" at the T–33. The target aircraft was to drop bundles of "chaff," small pieces of radar-reflecting aluminum foil which, when dispersed in the air, confuse the F–101 crew into firing simulated missiles at a false target. The T–33 was also equipped with an ECM pod, an electronic counting device designed to block the radar frequency of the tracking aircraft.

The accident occurred when the T–33 hit a tower immediately after it became airborne. Both the chief of flight safety and the runway supervisor characterized the flight as a training mission. Appellants' points of error four and six are overruled.

 In their seventh and final point of error, the appellants assert that the jury's answer to Special Issue Number One was against the great weight and preponderance of the evidence. Special Issue No. 1 asked:

Do you find from a preponderance of the evidence that at the time of his death the aircraft occupied by Dr. Entzminger was not being operated for any training or testing or experimental purpose?

The jury answered, "We do not."

Careful examination of the statement of facts does not indicate that this verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Indeed, the evidence summarized above was ample to prove that Dr. Entzminger's flight with an experienced and qualified pilot to serve as a dummy radar target for interceptor aircraft was a flight operated for training purposes. The appellants' seventh point of error is accordingly overruled.

The judgment is affirmed.