ACCEPTED
01-14-00650-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/28/2015 8:09:20 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00650-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/28/2015 8:09:20 PM

CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

OSCAR D. TAYLOR AND DENISE TAYLOR,
*Appellants,*

V.

ADRIENNE A. HENNY AND DAMON K. HENNY
*Appellees.*

Appealed from the 152nd Judicial District of Harris County, Texas
Cause No.: 2008-40075

**APPELLEES' RESPONSE TO BRIEF OF APPELLANTS**

**THE CARTER LAW FIRM**
Eric G. Carter
SBN: 03914500
1811 Southmore Boulevard
Houston, Texas 77004
ecarter@carter-lawfirm.com
Tel: (713) 227-0042
Fax: (713) 227-7001

**ATTORNEYS FOR APPELLEES:**
**ADRIENNE A. HENNY and DAMON K. HENNY**

**APPELLEES DO NOT REQUEST ORAL ARGUMENT**

1

## STATEMENT REGARDING THE BRIEFS

On November 26, 2014, Oscar and Denise Taylor (the "Taylors"), Appellants/Cross-Appellees filed their Appellant's Brief.

On December 29, 2014, Adrienne A. and Damon K. Henny (the "Hennys") moved for extension of time to file their Response to the Appellant's Brief. This request was granted by this Honorable Court, and the time to respond was extended until January 28, 2015.

On January 5, 2015, prior to the deadline to respond to Appellant's Brief, Hennys filed their Cross-Appellant's Brief, wherein they asserted the specific arguments covered by their own Notice of Appeal.

On January 22, 2015, Taylors filed their Response to the Cross-Appellee's Brief. Taylors' Response makes numerous arguments related to waiver and states that Hennys failed to include numerous grounds in Hennys' Cross-Appellant's brief. However, many if not all of the points argued as "waived" in Taylors' Response to Cross-Appellant's Brief are addressed herein, in response to many of the Taylors' own arguments. It may be that Cross-Appellant's method of briefing may be unorthodox but Hennys did not intend to waive any arguments by reserving them for Hennys' Response to the Taylors' Appellant's Brief.

Any confusion regarding Hennys' points and cross-points on appeal was not intentional, and permitting Hennys to raise them herein does not operate as an

injustice on Taylors. To the extent that Taylors argue waiver, Hennys hereby request that this Honorable Court consider its argument herein.

As a matter of course, Hennys intend to file a timely reply to the Taylors' Response to Cross-Appellant's Brief, wherein developed argument regarding waiver will be contained.

# TABLE OF CONTENTS

STATEMENT REGARDING THE BRIEFS……………………………………. 2

TABLE OF CONTENTS……………………………………………………… 4

INDEX OF AUTHORITIES…..……………………………………….....….. 5

ISSUES PRESENTED FOR REVIEW……………………………………….. 7

STATEMENT OF FACTS…………………………………………………. 8-16

SUMMARY OF THE ARGUMENT……………………………….………. 16

ARGUMENT…………………………………………………………….. 16-36

**ISSUE NUMBER ONE**…………………………………………….......  17
ARGUMENT AND AUTHORITIES FOR ISSUE ONE....……………….. 17-24

**ISSUE NUMBER TWO**……………………………………………...…  24
ARGUMENT AND AUTHORITIES FOR ISSUE TWO...……………….. 24-29

**ISSUE NUMBER THREE** …………………………………………….… 29
ARGUMENT AND AUTHORITIES FOR ISSUE THREE..…..………….. 29-34

**ISSUE NUMBER FOUR** …………………………………………….. 35
ARGUMENT AND AUTHORITIES FOR ISSUE FOUR..…..………... 35-36

PRAYER…………………………………………..……….….………… 36-37

CERTIFICATE OF COMPLIANCE…………………………………….... 38

CERTIFICATE OF SERVICE………………………………………….. 39

# INDEX OF AUTHORITIES

## <u>Cases</u>

*Covered Bridge Condominium Ass'n, Inc. v. Chambliss*, 705 S.W.2d 211 (Tex. App. Houston 14th Dist. 1985), writ refused n.r.e., (June 4, 1986)……………………… 18

*Entzminger v. Provident Life & Acc. Ins. Co.*, 652 S.W.2d 533 (Tex. App. Houston 1st Dist. 1983)…………………………………………………………………… 18

*Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655 (Tex. App. Houston 1st Dist. 1986), writ refused n.r.e., (June 4, 1986)……………………………………………... 18

*Huffines v. Swor Sand & Gravel Co.*, 750 S.W.2d 38, 40 (Tex.App.—Fort Worth 1988, no writ)………………………………………………………………….. 22

*Alamo Clay Prods v. Gunn Tile Co.*, 597 S.W.2d 388, 392 (Tex.App.—San Antonio 1980, writ ref'd n.r.e.)…………………………………………………………….. 22

*Northern Nat. Gas. Co. v. Chisos Jt. V. I,,* 142 S.W.3d 447, 458 (Tex.App.—El2Paso 2004, no pet.)……………………………………………………………… 21

*International Shelters, Inc. v. Corpus Christi State National Bank*, 475 S.W.2d 334, 336 (Tex.Civ.App. Corpus Christi 1971, no writ)………………………… 24

*Texas State Board of Registration for Professional Engineers v. Trimble*, 366 S.W.2d 124 (Tex.Civ.App.—El Paso, 1963, writ ref'd n.r.e.)………………………. 24

*Fisher v. Howard*, 389 S.W.2d 482, 486 (Tex.Civ.App.—Dallas 1965, n.w.h.)…. 24

*Mead v. Johnson Grp., Inc.,* 615 S.W.2d 685, 687–88 (Tex.1981)……………….. 24

*Tidwell Props., Inc. v. Am. First Nat'l Bank,* No. 14–04–00120–CV, 2006 WL 176862, at *3 (Tex.App.-Houston [14th Dist.] Jan. 26, 2006, no pet.)…………… 24

*S. Elec. Servs., Inc. v. City of Houston,* 355 S.W.3d 319, 324 (Tex.App.-Houston [14th Dist.] 2011, pet. denied)……………………………………………… 25

*Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 758 (Tex.App.-El Paso 2000, no pet.)………………………………………………………………….. 25

*Jackson v. Henderson*, 2004 WL 1631394 at *4-5 (Tex.App.—Houston [1ˢᵗ Dist] July 22, 2004, no pet.)…………………………………………………… 26, 28

*Voss Road Exxon, LLC v. Vlahakos*, 2011 W.L 2623989, at *7 (Tex.App.—Houston [1ˢᵗ Dist.] June 30, 2011, no pet.)………………………………… 26-27

*Wingate v. Hajdik,* 795 S.W.717, 719 (Tex. 1990)………………………… 27-28

*Commonwealth of Massechusetts v. Davis*, 140 Tex. 398 (1942)……………….. 27

*ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) …… 28

*Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992)……………….. 29

*St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.,* 974 S.W.2d 51, 53 (Tex. 1998) ……………………………………………………………………….. 35

*Provident Am. Ins. Co. v. Casteneda,* 988 S.W.2d 189, 199 (Tex. 1998)…………… 35

*Donnelley Marketing v. Lionel Sosa, Inc.,* 716 S.W.2d 598 at 602 (Tex.App.—Corpus Christi 1986)…………………………………………………… 35

*Ryan Mortg. Investors v. Fleming-Wood,* 650 S.W.2d 928 at 933 (Tex.App.—Fort Worth, 1983)………………………………………………………….. 35

*Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 n. 4 (Tex.1981)………... 35

*Texas Cookie Co. v. Hendricks & Peralta, Inc.,* 747 S.W.2d 873, 878 (Tex.App.—Corpus Christi 1988, writ denied)………………………… 35-36

## Statutes

Tex. Bus. Org. Code § 21.563(a), (c) …………….…………………….. 28

Tex. R. Civ. P. 193.6.……………………………………………….. 29-30, 32-33

Tex. R. Civ. P. 90-91………………………………………………….. 32

Tex.R.Civ.P. 278 …………………………………………………….. 35-36

6

## ISSUES PRESENTED FOR REVIEW (Restated)

1. The Taylors breached the Separation Agreement when they refused to fully remove themselves from the lease agreement.

2. The Taylors' breach caused the Hennys' damages.

3. The Hennys are legally entitled to damages for both mitigation and loss of credit reputation, and presented legally sufficient evidence of both theories of recovery.

   a. The Hennys' evidence of damages should not be excluded as contended by Appellants.

4. The Hennys did not combine valid and invalid theories of recovery which require a new trial on breach of contract.

   a. A new trial is not required on breach, causation, or damages.

# STATEMENT OF FACTS

In 2001, Adrienne A. Henny and Damon K. Henny (the "Hennys") joined with Oscar D. Taylor and Denise Taylor (the "Taylors") to open a restaurant business called Cayenne's. The two families owned the stock in Cayenne's Restaurant, Inc. and operated many of the day-to-day operations as the business continued. The business flourished through the first few years of operation, and the Hennys and Taylors continued to expand to as many as three locations in 2005. 4RR29-60, 73.

Two of the Cayenne's locations, which are at the center of this dispute, were leased with Weingarten Realty Investors, and located on Kirby and FM 1960, respectively. DX2:8RR2; DX4:10RR2. Cayenne's entered into a 10-year lease agreement with Weingarten Realty Investors for the Kirby location on March 31, 2005. DX2 Denise Taylor executed the lease on behalf of Cayenne's, Inc. as President. *Id.* Both Denise Taylor and Adrienne A. Henny signed a personal guarantee on the lease agreement. *Id.*

Things continued to progress smoothly, until the Hennys uncovered, through a meeting between the Cayenne's bookkeeper and Mrs. Henny, that Denise Taylor had unilaterally, and without notice or permission, decided to give herself an increase in wages. 3RR70-71; 5RR57. Naturally, this upset the Hennys, who continued to investigate the possibility of any other improprieties of the Taylors in their business dealings. When confronted with the findings, Mrs. Taylor confirmed that she had indeed committed these actions. 5RR57-58. The Hennys later discovered through an

independent investigation by Mrs. Henny, that Mrs. Taylor's misdeeds and/or mismanagement ultimately led to an outstanding IRS debt, and that Mrs. Taylor hid that information from the Hennys. 5RR60. This IRS debt in the amount of $63,536.45 is referenced in the Separation Agreement. PX1.

Tensions grew between the families, and the four could not reconcile after the discovery of the Taylors' actions. 5RR58. Ultimately, the Hennys and Taylors decided to divide the business and entered into the 2005 Separation Agreement for that purpose. PX1; 5RR58. The Separation Agreement was signed on December 20, 2005. PX1.

Under the Separation Agreement, the Hennys were to own and operate the Kirby and 1960 locations, while the Taylors were to retain the Woodforest Boulevard location of Cayennes. PX1. The parties agreed that they would work together to effectuate the clean division of the business and agreed to let each couple run their respective parts "without interference". *Id.* The two couples decided to end the Cayenne's business, and each was to conduct business under a new name of their choosing. *Id.* The Taylors elected to change the name of their business to "Bonfire" and formed a company for that purpose. 3RR121, 124. Likewise, the Hennys elected to name their business Coozan's Hot Wings and Bayou Café, and formed a limited liability company under the same name for that purpose ("Bayou Café"). 3RR81.

Among other things, the parties agreed to work with all third parties to effectuate these transfers of ownership. PX1. Many of the respective transfers, name

9

changes, etc. were done without issue. Mr. Taylor contended that, for every item needed to get Bonfire up and running, he "knocked it out of the park." 3RR212. But, when it came to performing in a manner which would directly benefit the Hennys, the Taylors sat on their hands. This inaction, as it turned out, cost the Hennys dearly.

The Taylors failed when their cooperation was needed in transferring or assigning the leases of the Kirby and 1960 location from Cayenne's to Bayou Café. 3RR86-88; 3RR221-222. The Taylors knew of this failure, but did not give meaningful effort to effectuate the full assignment to the Hennys' new business. The Taylors testified that they made a few phone calls to Weingarten to determine what was needed to remove themselves from the Weingarten Lease. 3RR88; 3RR221-222. This inaction continued for over two years. But the Hennys, having a business to run, continued to run the Bayou Café locations under the original lease.

Both Bonfire and the Hennys' Bayou Café continued successfully. In approximately 2006, Mr. Henny was promoted in his primary career, and relocated to the Washington, D.C. area for work. 5RR9. Mr. Henny commuted to and from the Washington, D.C. area for work, and Mrs. Henny operated the Bayou Café locations. After approximately a year of this practice, the Hennys ultimately decided to sell their successful restaurant business. 4RR133-134; 5RR10.

Experienced businessman, Bruce Pollock, expressed interest in purchasing the business in 2007, and formed Coozan's, Inc. to purchase the Bayou Café restaurants. PX2. The parties entered into an Asset Purchase Agreement on February 05, 2008.

PX2. At or about this time, the operations of the Bayou Café business were taken over by Coozan's, Inc. 3RR175. As consideration for the purchase of Bayou Café, Coozan's, Inc. was to pay $34,160.00, issue shares of Coozan's Inc. to the Hennys, and assume approximately $500,000.00 in outstanding liabilities. PX2; 4RR145; 4RR147-148; 3RR156-169. The Asset Purchase Agreement was contingent on the assignment of the leases to Coozan's, Inc. PX2; 9RR5.

The Hennys could not assign or otherwise convey the Kirby or 1960 leases to Coozan's, Inc. because the Taylors had never permitted the assignment from Cayenne's to Bayou Café, LLC. 3RR158-159. The Hennys again reached out to the Taylors, pleading that they help to get this administrative change accomplished. 3RR96. Mr. Pollock himself met with Mr. Taylor and explained the urgency of the matter, and the necessity of the Taylors' cooperation. 3RR115; 3RR204-212. The Taylors, knowing that their collaboration was required to assign the lease from Cayenne's, sat idly by and refused to effectuate the final separation of the Cayenne's business. 3RR158-160. The Taylors heard the demand from the Hennys and heard the importance of their cooperation from Mr. Pollock. Nevertheless, the Taylors refused to make a serious effort to assist in the transfer or assign the lease away from Cayenne's.

The Taylors refusal led to catastrophic financial damage to the Henny family. Because the Cayenne's lease could not be assigned to Bayou Café, Bayou Café could not legally assign the lease to Coozan's, Inc. 3RR158-160. This interference from the

11

Taylors ultimately led to the failure of the Asset Purchase Agreement between Bayou Café and Coozan's, Inc. 3RR158-160; 5RR10. Bruce Pollock, the purchaser of the Hennys' business even described the Taylors' inaction as the "kill stroke" to the Asset Purchase Agreement. 3RR160. This loss cost the Hennys approximately one million dollars. 4RR142-143.

Coozan's, Inc. had been operating the Bayou Café businesses during the finalization of the Asset Purchase Agreement and necessary leases. 3RR175. When the Asset Purchase Agreement locked up and fell apart as a result of the Taylors' interference, Pollock and Coozan's, Inc. moved on. By the time Hennys regained operations of the Bayou Café, the locations were closed, the staff had dispersed, and the Hennys could not reestablish the business to salvage itself. The bank had begun the process of collecting on their loans and seized the equipment and inventory. 4RR145. The Bayou Café business was simply too far gone and was completely overrun by creditors' attacks. A business that steadily grew, earning as much as $996,000.00 in revenue and $109,000.00 in net profit in 2006, could not recover. PX2; 9RR17.

Then the lawsuits came. Creditor after creditor called, demanded, and sued the Hennys relentlessly. This cause was originally one such case and was originally styled *Advanceme, Inc. v. Coozan's Hot Wings & Bayou Café, LLC and Adrienne A. Henny.* On or about July 1, 2008, AdvanceMe, Inc. filed its Original Petition against Bayou Café and Henny seeking to recover certain amounts allegedly owed to AdvanceMe, Inc. under

three individual Merchant Agreements. 1CR5. On or about June 19, 2009, Henny filed her Third-Party Petition (erroneously titled "Cross-Claim Petition"), joining the Taylors as Third-Party Defendants that were responsible to Henny or AdvanceMe, Inc. for all or part of AdvanceMe, Inc.'s claims. 1CR21. After several years of litigation with AdvanceMe, Inc., Henny, was finally able to buy her peace through a confidential settlement agreement with AdvanceMe, Inc.[1] Unfortunately, AdvanceMe, Inc. was only one of the creditors lining up to attack the Hennys.

JPMorgan Chase Bank, N.A. achieved summary judgment against Bayou Café in 2008, under Cause No. 2008-06676, then pending before the 51st Judicial District Court of Harris County, Texas, in the amount of $251,814.33. The business loans originally made with Cayenne's, Inc., which were then divided amongst the Taylors and Hennys pursuant to the Separation Agreement, formed the subject matter of this litigation. The Hennys ultimately litigated and settled with JPMorgan Chase Bank, N.A. 4RR145; 5RR117-118. The Hennys testified that after the collapse of the Bayou Café business, to buy their peace from the bank, they had to start borrowing from Mr. Henny's retirement fund. 4RR145; 4RR147-148.

Sysco Food Services of Houston, Inc. also achieved a default judgment against Bayou Café in 2007, under cause No. 904,325, then pending before the County Civil Court at Law No. 2 of Harris County, Texas. DX6:10RR36. The judgment was in the

---

[1] The style of this case was changed to its current status prior to trial so as to avoid confusion and reflect the correct parties involved at the time of trial. 1CR76.

amount of $83,792.84. This litigation centered on the food and other inventory items charged on account to Bayou Café. 4RR115-117. This matter was litigated, and ultimately settled, leading to a release of judgment filed on June 10, 2011.

San Antonio Federal Credit Union ("SAFCU") sued Adrienne A. Henny under Cause Nos. 11C1102248 and 11C1102258, before the Precinct 1, Place 1 Justice Court of Bexar County, Texas.[2] SAFCU sued Mrs. Henny for failure to pay the credit cards she used for the Bayou Café business. These cases were litigated, and ultimately settled.

Finally, the landlord in this transaction, Weingarten Realty Investors brought suit against Cayenne's, Denise Taylor and Adrienne A. Henny in relation to the very lease which is the subject of this litigation.[3] This case was pending before the 157th Judicial District Court of Harris County, Texas under Cause No. 2011-15295 for approximately three years. After three years of litigation, and after the trial which is the subject of this appeal, all parties and claims ultimately settled.

The evidence at trial established that the Taylors were bitter as a result of the Hennys' insistence on separation following the discovery of Mrs. Taylor's wrongful conduct. In violation of the Separation Agreement, the Taylors refused to cooperate

---

[2] These cases were ultimately transferred to the Precinct 7, Place 1 Justice Court in Harris County, Texas under Cause Nos. CV-71-C-0055490 and CV-71-C-0055493, respectively.

[3] Hennys also attempted to bring Weingarten in as a Third-Party Defendant in this case. Consolidation under one case was not successful.

or sufficiently investigate the steps necessary to assign or otherwise transfer the relevant leases to the Hennys' business.

The evidence at trial showed that Taylors knew of the importance of the leases to the Asset Purchase Agreement and Coozan, Inc., yet still refused to make a concerted effort to effectuate their removal from the lease. The Taylors' outright refusal to even make the first lease assignment to Hennys' Bayou Café, LLC serves as more than a scintilla of evidence of Taylors' intentional interference.

After trial, the jury unanimously found (1) that the Taylors had breached the Separation Agreement and (2) that the Taylors' actions also tortiously interfered with, and ultimately triggered the failure of, the sale of the Hennys' business to a third party. The jury rendered verdict in favor of the Hennys, awarding damages in the amount of $1,035,000.00, plus attorneys' fees (including conditional amounts on appeal) in the amount of $56,000.00. 1CR94.

The Trial Court granted, in part, the Taylors' Motion for Judgment Notwithstanding the Verdict, invalidating the Hennys' tortious interference claim, and barring Damon K. Henny's claims by limitations. 1CR 252, 257. The Trial Court rendered judgment for Adrienne Henny for $325,000.00, plus interest and a portion of her attorneys' fees. Granting, in part, Taylors' Motion for Modify, the Trial Court

further reduced the Hennys' judgment to $160,000.00, plus interest and a portion of her attorneys' fees.[4] 1CR286.

For the reasons herein stated, the Taylors' requests for relief should be denied.

## SUMMARY OF THE ARGUMENT

The Separation Agreement imposed multiple obligations on all the parties thereto. The Hennys were successful at trial because they were able to show that the Taylors breached their obligations to: 1) **cooperate in the full separation** of the Cayenne's business; and, 2) **not interfere** with the Hennys' operation of the Bayou Café business thereafter. Specifically, the Taylors breached these requirements by not removing themselves from the pertinent leases with a third-party, Weingarten. Their continued presence and interference with the Hennys' business ultimately cost the Hennys dearly.

For the reasons outlined here, the Taylors caused the damages that resulted from their breach. The Hennys presented ample evidence in support of their damages, and are legally entitled to the same.

## ARGUMENT AND AUTHORITIES

Appellants seek to avoid the last portions of the jury's answers against them for the bad acts, which was once represented by a 1.1 million dollar jury verdict. In a novel argument, the Taylors now attempt to shift responsibility back to the Hennys,

---

[4] The calculation of interest was not reflected in the Order of Remittitur.

16

though no legally of factually sufficient evidence of comparative responsibility was presented at trial.

Though reduced through various post-trial motions, the unanimous jury verdict returned in favor of the Henny family remains based on ample evidence and reliable legal precedent. As outlined below: (1) the Taylors had obligations under the Separation Agreement to separate themselves from the Hennys' business; (2) the Taylors refused to fully perform those obligations; (3) the Taylors' acts and omissions harmed the Hennys; and, (4) the Hennys are entitled to recover their proven damages.

## I. The Taylors' obligations under the Settlement Agreement:

The Taylors' have mischaracterized the Hennys' argument regarding the Separation Agreement, and the obligations imposed thereunder. The Taylors look to shift the interpretation of the Separation Agreement to assign all obligations on the Hennys. This argument amounts to a claim of ambiguity, as the Taylors wish to provide competing interpretations of the same provisions of the Separation Agreement. Nevertheless, a clear interpretation of the Separation Agreement assigns obligations on the Taylors, which they failed to perform.

### A. Contract Construction of the Separation Agreement:

By arguing their own interpretation of the Separation Agreement, the Taylors are essentially making an argument of ambiguity. Generally, one seeking to establish ambiguity under a written contract must specifically plead such ambiguity by setting out the portion claimed to be ambiguous, and then definitely pleading the

17

correct meaning or construction thereof as relied on by the party so claiming. *Covered Bridge Condominium Ass'n, Inc. v. Chambliss*, 705 S.W.2d 211 (Tex. App. Houston 14th Dist. 1985), writ refused n.r.e., (June 4, 1986); *Entzminger v. Provident Life & Acc. Ins. Co.*, 652 S.W.2d 533 (Tex. App. Houston 1st Dist. 1983); *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655 (Tex. App. Houston 1st Dist. 1986), writ refused n.r.e., (June 4, 1986). The Taylors have never pled ambiguity of the Separation Agreement. CR30, CR80. The Taylors' competing interpretation claims to establish that they had no obligations to the Hennys under the Separation Agreement, and therefore, the Hennys themselves failed under the Separation Agreement, resulting in their own damages.

It is clear from the plain language of the Separation Agreement that there are continued obligations thereunder. The parties are obligated to effectuate a clean division of the Separation Agreement and must continue their own operations without interfering with one another. PX1.

**B. The Administrative Changes Provision and the Taylors' Obligations:**

The two main provisions of the Separation Agreement at issue were:

" It is agreed Oscar and Denise Taylor will operate, manage and own Cayenne's Restaurant located on Woodforest Boulevard without interference from any other party. Damon and Adrienne Henny will operate, manage and own Cayenne's Restaurant located on Kirby and the Cayenne's

18

Restaurant located on FM 1960 without interference from any party.

It is agreed all administrative changes, including but not limited to contacting vendors, employees, and/or any necessary third parties, will be completed by February 1, 2006."

The Taylors interpretation of the Separation Agreement argues that the Hennys are the only ones obligated under these provisions. Appellants' Brief at 9. However, it requires both parties to participate in the administrative changes, as needed, to effectuate the division of the business.

The argument put forth by the Hennys at trial, which was supported by the jury's unanimous finding of breach, was that the contract provisions, when read with the entire agreement: 1) Required the Taylors to **cooperate in the full separation** of the Cayenne's business; and, 2) **Not interfere** with the Hennys' operation of the Bayou Café business thereafter. It was then the inaction of the Taylors, described *supra*, which ultimately caused the Hennys' injuries.

Yet, throughout Appellants' brief, they have asserted Hennys' argument that the provisions above *necessarily* required the following of Taylors:

- Guarantee the two leases for the benefit of the new owners;

- Obligate themselves to pay assignment fees as well as continuing to guaranty the monthly rental and other costs for the new owners; and

- Agree to an extended five-year term of one lease with an increased monthly rental amount for the benefit of the new owners.

The Appellants' argument is inaccurate. Though these obligations were discussed as possibilities, they were never determined by the parties to be an absolute result of the Taylors' performance under the Separation Agreement. As a result of Taylors' failure to adequately determine the actual steps to assign or otherwise remove themselves from the Hennys' future business, the parties may never know what obligations would have been required of the Taylors, if any.

The Separation Agreement required the Taylors to cooperate in the full separation of the Cayenne's business by removing themselves from the Hennys' future business. This would include seeking to remove themselves from the applicable leases with third-parties or at least cooperating to accomplish the same. Negotiating their removal from the lease was a contemplated interaction with a "third-party" described in the Separation Agreement. PX1.

The evidence presented at trial, which was considered by the jury, was that the Taylors refused to cooperate and fully discover what it would take to accomplish full division after the Separation Agreement was signed. 3RR88; 3RR221-222; 3RR158-160. Instead, the Taylors refused to cooperate and remove themselves from the

subject lease, knowing that their continued presence on the same was causing harm to Bayou Café business. 3RR115; 3RR204-212; 3RR158-160.

The plain language of the contract required the Taylors' cooperation, the Taylors' effort, and the Taylors' removal from the Hennys' future business. The Taylors agreed in this contract to undertake those actions necessary to fully effectuate the division of the Cayenne's business. The testimony at trial on this subject was that the Taylors did very little to determine what could be accomplished regarding the subject leases. 3RR88; 3RR221-222. Denise and Oscar Taylor testified that they only made a few phone calls to determine the possibilities of assignment or removal from the subject leases. *Id.* As a result, the jury determined unanimously that Taylors' actions were not sufficient to qualify as performance of their obligation under the Separation Agreement. CR94.

### i. Participation in the Sale of the Hennys' Business

As outlined above, the Taylors contend that the Hennys interpretation of the Separation Agreement necessarily requires them to "cosign" or agree to guarantee the lease for an additional 5-year term. 3RR88-89, 95. However, the Hennys did not require the Taylors' active participation in the sale of the Hennys' business, as is contended in Appellants' Brief. The Separation Agreement, however, required the Taylors to make a meaningful effort to remove themselves from the Weingarten lease.

### ii. The Separation Agreement contemplates continuing responsibilities, without interference.

The refusal by the Taylors also put them in direct violation of the "without interference" provision of the Separation Agreement. The Taylors refused to even assign the subject lease, in the name of Cayenne's, to Hennys' newly formed Bayou Café, LLC. Moreover, the Taylors' refusal to participate in determining the necessary steps for removal from the lease, and their refusal to assign the subject lease to the Hennys, interfered with the Hennys' ability to run their company, Bayou Café.

The Taylors, in essence, argue that their continuing responsibilities are more burdensome than anticipated at the time of signing the Separation Agreement. The Taylors' performance, however, cannot be excused simply because it became more economically burdensome than anticipated. *Huffines v. Swor Sand & Gravel Co.*, 750 S.W.2d 38, 40 (Tex.App.—Fort Worth 1988, no writ); *Alamo Clay Prods v. Gunn Tile Co.*, 597 S.W.2d 388, 392 (Tex.App.—San Antonio 1980, writ ref'd n.r.e.); *see, Northern Nat. Gas. Co. v. Chisos Jt. V. I.*, 142 S.W.3d 447, 458 (Tex.App.—El Paso 2004, no pet.). Removal from the leases may have required the Taylors to incur additional time, responsibility or expense. The additional expense would not have justified their refusal to perform under the Separation Agreement.

### iii. The Limitations of the Separation Agreement.

The simple demands made by the Hennys were well within the limitations of the Separation Agreement. The Taylors contend that the Hennys' demanded the

Taylors to actively participate in the sale of the Hennys' business, or the operations of the new business after the sale. This is not accurate.

The Hennys made demands that are well within the limitations of the Separation Agreement: 1) Taylors must **cooperate in the full separation** of the Cayenne's business; and, 2) **Not interfere** with the Hennys' operation of the Bayou Café business thereafter. The Taylors refused to contact a third-party (Weingarten) to make a reasonable effort and participate in the removal of Cayenne's from the Weingarten lease. The Taylors' act and omissions were in direct violation of the Separation Agreement, and within the contemplated limitations thereof.

### iv. Taylors are barred from asserting the defense of "Justification" and "Impossibility to Perform".

The Taylors assert that removal of themselves from the lease with a third-party was impossible because Weingarten "refused to allow the Taylors to be removed from the leases." However, the uncontroverted evidence showed that Taylors did very little to research the steps necessary to effectuate their removal from the lease. 3RR88; 3RR221-222. The Taylors' refusal to pursue discussion with the Hennys and Weingarten cannot render performance "impossible", nor can it supply Taylors with some sort of justification for their breach.

Moreover, "Justification" and "Impossibility to Perform" are both avoidance defenses which must be affirmatively pled, pursuant to Tex. R. Civ. P. 94. It is well settled law in Texas that an affirmative defense must be both pled and supported by

23

evidence to make out a fact issue. *International Shelters, Inc. v. Corpus Christi State National Bank*, 475 S.W.2d 334, 336 (Tex.Civ.App. Corpus Christi 1971, no writ); *Texas State Board of Registration for Professional Engineers v. Trimble*, 366 S.W.2d 124 (Tex.Civ.App.—El Paso, 1963, writ ref'd n.r.e.); *Fisher v. Howard*, 389 S.W.2d 482, 486 (Tex.Civ.App.—Dallas 1965, n.w.h.). The Taylors did not plead this matter prior to trial, did not present legally or factually sufficient evidence to support a finding in favor of either of these possible affirmative defenses, and did not present these special issues to the jury. The Taylors must not be permitted to present them now.

## II. THE TAYLORS' BREACH CAUSED THE HENNYS' DAMAGES.

Causation exists to support the Hennys' claims. The Taylors contend that their failure to remove themselves from the leases did not cause the Hennys' damages as a matter of law. Taylors argue that Hennys' damages were not a natural, probable, and foreseeable consequence of the Taylors' breach, and 2) the opportunity to assign the leases had expired when the Taylors received the paperwork. The Taylors argument fails.

### A. Loss was unavoidable, according to Taylors.

To recover consequential damages in a breach of contract action, the plaintiff must show that the damages sought were the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687–88 (Tex.1981); *Tidwell Props., Inc. v. Am. First Nat'l Bank*, No. 14–04–00120–CV, 2006 WL 176862, at *3 (Tex.App.-Houston [14th Dist.] Jan. 26, 2006, no pet.). The

24

absence of a causal connection between the alleged breach and the alleged damages precludes recovery. *S. Elec. Servs., Inc. v. City of Houston,* 355 S.W.3d 319, 324 (Tex.App.-Houston [14th Dist.] 2011, pet. denied); *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 758 (Tex.App.-El Paso 2000, no pet.).

The damages that resulted from the Taylors' actions were foreseeable because the Taylors were on actual notice of the consequences of their inaction. The Taylors were aware that the Hennys required their cooperation in the handling of the third-party Weingarten lease. 3RR96; 3RR115; 3RR204-212. The Taylors sat idly by, even after Mr. Taylor met with Mr. Pollock, the purchaser of the Bayou Café business. 3RR158-160 The Taylors knew that their inaction would cause the failure of the Bayou Café sale. 3RR158-160 The Taylors would not participate in serious discussion to remove themselves from the Cayenne's lease. The Taylors knew that without their participation, assignment, or removal, the Hennys could not effectuate a transfer of the lease from Bayou Café to Coozan's, Inc. These calls, discussions, and meetings operate as actual, reasonable notice of the damaging results of any breach of the Separation Agreement.

**B. The Taylors were aware of the need for their cooperation with the lease before any options "expired":**

The Taylors contend that the option to permit the assumption expired three weeks prior to their receipt of the same. In making this contention, the Taylors want

the Court to believe that the option to permit the assumption expired three weeks before they had allegedly learned of the option's existence. This simply isn't the case.

The evidence at trial was that Mrs. Henny repeatedly contacted Mrs. Taylor in an effort to convey the message that their effort was necessary to effectuate the full division of the Cayenne's company. 3RR96. It was after these repeated requests from Mrs. Henny took place that the Hennys resorted to seeking the aid of counsel. Even before Hennys' counsel forwarded the lease documents on May 28, 2008, the Taylors were aware that the Weingarten matter required their attention. 3RR88; 3RR96; 3RR115; 3RR204-212. The evidence at trial established this fact, and the jury unanimously agreed.

The Taylors cite *Jackson v. Henderson*, 2004 WL 1631394 at *4-5 (Tex.App.—Houston [1st Dist] July 22, 2004, no pet.) in support of their contention. However, this case is distinguishable from Jackson because the Taylors knew the Weingarten matter required their attention far before the demand letter from Hennys' Counsel on March 28, 2008. 3RR88; 3RR96; 3RR115; 3RR204-212. For the same reasons, the Taylors reliance on *Voss Road Exxon, LLC v. Vlahakos*, 2011 W.L 2623989, at *7 (Tex.App.—Houston [1st Dist.] June 30, 2011, no pet.) is equally misguided. The Taylors' failure to follow up and cooperate cannot permit them to escape liability.

### C. Adrienne Henny and Damon Henny have standing:

Taylors also allege that the Hennys lack standing to complain as to either of the Taylors' interference with the Asset Purchase Agreement or breach of the Separation

Agreement. The Taylors cite *Wingate v. Hajdik,* 795 S.W.717, 719 (Tex. 1990) and its progeny in support of this standing contention. However, the Taylors' reliance on *Wingate* is misguided as the Hennys' case falls under a well-established exception to the general rule.

A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong. *Wingate*, 795 S.W.2d at 719. However, in the following paragraph, the Texas Supreme Court confirms an applicable exception to the general rule above. "This rule does not, of course, prohibit a stockholder from recovering damages for wrongs done to him individually "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." *Id.*

The Court sites its previous 1942 decision from *Commonwealth of Massechusetts v. Davis*, 140 Tex. 398 (1942):

> "There are authorities which recognize an exception to the above rule, where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder. The exception has been applied more often in cases where there was a fiduciary relationship which required the wrongdoer to protect the interest of the stockholder, and this duty was violated, and full relief to the stockholder could not be had through a recovery by the corporation." *Davis*, 140 Tex. at 408.

27

In the instant case, the Hennys' personal financial security was destroyed as a result of their former-partners' actions.

Texas law also recognizes the right of the owner of a closely held corporation to pursue claims personally or in the name of the corporation. Tex. Bus. Org. Code § 21.563(c). The testimony of Mr. and Mrs. Henny was that there were less than 35 shareholders. 5RR25-26 Bayou Café was not publicly traded. Accordingly, for purposes of the Business Organizations Code, Bayou Café, LLC was a closely held corporation. Tex. Bus. Org. Code § 21.563(a). For these reasons, the Hennys have standing to bring suit in their names, personally.

The Taylors further proffered a catch-all contention that Hennys' damages were too remote, citing *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010). This contention is, in some regards, based on the standing issue as described in *Wingate* above, as well as the foreseeability analysis from *Jackson*, *supra*. The Hennys hereby assert the same analysis which renders *Jackson* inapplicable in this case. And, *Wingate* establishes an exception to the rule under which the Hennys' qualify. There is sufficient evidence to support the finding that the Taylors' breach caused the Hennys' injuries.

To the extent that the Taylors are attacking the foreseeability of the Hennys' claim for lost profits and sufficiency of evidence in support of the same, the rule concerning adequate evidence of lost profit damages is well established: "Recovery for lost profits does not require that the loss be susceptible of exact calculation. However,

28

the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates". *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992) (citations omitted). The Hennys produced legally and factually sufficient evidence in support of their claim for lost profits through the unopposed offering of the Asset Purchase Agreement. PX2.

## III. THE HENNYS ESTABLISHED THEIR DAMAGES:

### A. Hennys' evidence of damages should not be excluded.

The Taylors contend that the Hennys are barred from recovering damages found by the jury for two reasons: 1) Exclusion pursuant to Tex. R. Civ. P. 193.6(a); and 2) insufficient evidence of mitigation damages and damages resulting from a loss of credit reputation.

#### i. Hennys' actions led to no surprise or prejudice to Taylors, and Good Cause Exists to preclude exclusion.

This issue falls under the exception to the rule of automatic exclusion in Rule 193.6. The exception to this Rule allows the Court to permit evidence upon a finding

of good cause **OR** an absence of unfair surprise or prejudice. Tex. R. Civ. P. 193.6(a)(1) and (a)(2). In this case, the damages claimed by the Hennys were disclosed numerous times, in writing and verbally.

On May 28, 2008, the Hennys forwarded their demand for action to Taylors, and included a copy of the Original Petition the Hennys intended to file. DX17.

On June 19, 2009, the Hennys filed this same Petition. CR21. In this Petition, the Hennys disclosed the lost value of the Asset Purchase Agreement, and discussed the varying theories by which the Hennys sought to assign liability for their injury to, among others, the Taylors. *See, Id.*

On September 4, 2009, the Hennys filed their First Amended Third-Party Petition, wherein total actual damages of $1,400,000.00 were disclosed. Supp.CR22.

These figures were again disclosed though the filing of Hennys' Second and Third Amended Third-Party Petition. Supp.CR35, 49.

On August 17, 2012 the Hennys filed their Fourth Amended Third-Party Petition. CR43. At this point in the case, discovery was still ongoing, but the Hennys' had learned far more regarding the specific actions of the Taylors, Mr. and Mrs. Taylor. The Hennys reasserted the actions for Breach of Contract, Common-Law Fraud, Negligent Misrepresentation, Conspiracy, and Tortious Interference against the Taylors. The Hennys also disclosed that they sought over $1,000,000.00 in damages, plus attorney's fees and expenses, for the Taylors' wrongful conduct. *Id.*

30

On August 24, 2010, counsel for the Taylors inspected all of the Hennys' records at their counsel's office.

Since the Taylors were brought in as Third-Party Defendants, they only conducted limited discovery. The Taylors took no depositions. The Taylors sent meager written discovery. The Taylors have not asserted any specific undue surprise or prejudice that resulted from the inclusion of the Hennys' damages at trial, other than to assert that they did not receive the benefit of automatic exclusion. Appellants' Brief at 24-25

Good Cause exists for the Hennys' actions. For example, the Hennys learned critical facts during post-judgment discovery (the deposition of Adrienne A. Henny) and discussions with JPMorgan Chase, N.A.'s. The facts learned included the effect of Taylors' actions on the Hennys' credit and the cost of mitigation (which could not be accurately calculated prior to deposition and settlement with JPMorgan Chase). This information was discovered shortly before trial in this case. 5RR181.

Further, good cause existed, as was discussed with the Trial Court, because lead counsel for the Hennys was hospitalized for approximately two weeks at or about the discovery deadline in the trial court, where the parties would have assessed and supplemented discovery to avoid any of these exclusionary pitfalls. 3RR11.

Ultimately, when notified that their disclosure responses might be insufficient, the Hennys' **immediately** attempted to amend and produce a more in-depth analysis of their damages model and calculations. 3RR6. The Taylors did not request a trial

continuance because the amendment only confirmed those damage models and calculations they were already anticipating.

Furthermore, at or about this time, the Hennys elected not to pursue several of the causes of action against Taylors, including Fraud, Negligent Misrepresentation, and Conspiracy. The Hennys also elected not to pursue exemplary damages.

The Taylors had notice of the damages sought by the Hennys. The parties mediated this case. The parties were in settlement negotiations in the Weingarten case, and were intimately aware of each other's positions, including the amount and method for calculating the Hennys' damages. Finally, the Hennys never sought an amount in excess of their pleadings and only requested such damages from the jury.

When considering the information above, the information produced was of no surprise or prejudice to the Taylors, and good cause exists for the Hennys' actions. For these reasons, this case falls under the exceptions to Tex. R. Civ. P. 193.6(a), and the Hennys' should not suffer exclusion of their evidence on damages.

To the extent that the Taylors claim the Hennys' pleadings were insufficient, the Taylors waived any error. Failure to file a special exception constitutes a waiver of any error in the plaintiff's pleadings. *See*, Tex. R. Civ. P. 90-91. The pleadings, both in Hennys' previous petitions, and in their 5th Amended Petition (and discussion regarding leave to file the same), put the Taylors on reasonable notice of the damages which were to be sought – including lost profits. It is clear that Taylors were content with the information provided, and elected to forgo special exception procedures.

Admittedly, the Taylors fought for the application for automatic exclusion pursuant to Tex. R. Civ. P. 193.6. However, they failed to produce a reasonable argument as to why the exception of Tex. R. Civ. P. 193.6(a)(1) and (a)(2) would not apply. This is apparent from the record when Taylors own counsel entered the Hennys' pleadings as evidence, but ultimately withdrew the same. 5RR75. The Taylors were desperately trying to preserve this automatic-exclusion argument. *Id.*

To the extent that evidence was submitted by the Hennys without objection, or entered by the Taylors of their own accord, the Taylors have waived any argument regarding the sufficiency of the Hennys' pleadings, and tried said issues by consent.

**B.    The Hennys' testimony regarding past and future cost of Mitigation.**

**A.  Adrienne Henny's past and future cost of mitigation:**

The evidence at trial, through the testimony of Mr. and Mrs. Henny, was that they fought to pay off the outstanding debt, even borrowing from Mr. Henny's retirement plan and savings, in an effort to save their business through various and sundry settlements and legal battles. 5RR27; 4RR141-142; 4RR145; 4RR147-148. The Taylors themselves introduced evidence regarding mitigation through the direct and cross examination of Mr. Taylor. 4 RR 107, 114; 4RR117-118. Both parties also testified as to the claims asserted by Weingarten Realty Investors against them, the total amount sought by Weingarten, and ongoing settlement negotiations with the same. It was also testified that Mrs. Henny's expected exposure in that proceeding was approximately $70,000.00. 5RR27. This testimony was legally and factually sufficient

33

evidence, and based on actual knowledge of the Hennys' damages - both the past and future exposure.

As a result of legally and factually sufficient evidence, the jury unanimously agreed that the Hennys were entitled to receive $110,000.00 (for past and future costs) as compensation for their cost of mitigation.

**C. The Hennys' testimony regarding damage to Credit Reputation:**

The Hennys established sufficient evidence in support of their damages of loss of credit reputation. Specifically, Mr. Henny testified that, having no other option for paying off the mounting debt and creditors' attacks, he was forced to borrow from his own retirement plan. 4RR145; 4RR147-148. Mrs. Henny testified that she could not get a loan at the bank. 5RR55-56. Then, **there is Mr. Taylor's own testimony** of the Hennys' declining credit reputation, and the ongoing attacks of creditors on the Hennys. 4 RR 107, 114; 4RR117-118. Due to the declining credit reputation as a result of the Taylors' actions, the Hennys were refused loans, and suffered the result of having to take their own retirement funds to pay off creditors. 4RR147-148 These undeniable facts meet the standards of *St. Paul Surplus* and *Casteneda* as cited by Taylors. *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.,* 974 S.W.2d 51, 53 (Tex. 1998); *Provident Am. Ins. Co. v. Casteneda,* 988 S.W.2d 189, 199 (Tex. 1998).

## IV.   NO NEW TRIAL IS NECESSARY

The Taylors, in the alternative to a take-nothing judgment, seek a New Trial. However, the Taylors' arguments in favor of this relief fail.

### A.  There are no mixed valid/invalid theories of liability.

The Taylors' argument that the findings by the jury commingle valid and invalid theories of breach is an argument that was first raised in the Taylors' Motion for Judgment Notwithstanding the Verdict. The Hennys' have appealed the findings thereof, and anticipate that many of the arguments will be contained in their own Cross-Appellants' Brief, and Reply to the Taylors' Reponses thereto.

Nevertheless, the Taylors have waived this argument as a result of their failure to properly submit this special issue to the jury. The Taylors objected to the inclusion of a broad form question as to breach of contract, but they did not seek an instruction, or otherwise preserve their objection before the jury began deliberations.

In order to complain of the trial court's failure to submit an explanatory instruction, appellant must have requested a substantially correct instruction. *Donnelley Marketing v. Lionel Sosa, Inc.,* 716 S.W.2d 598 at 602 (Tex.App.—Corpus Christi 1986); *Ryan Mortg. Investors v. Fleming-Wood,* 650 S.W.2d 928 at 933 (Tex.App.—Fort Worth, 1983); Tex.R.Civ.P. 278. Where the trial court has failed to include instructions on the proper measure of damages, it is the complaining party's burden both to object to the charge and to tender such instructions in substantially correct form. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 n. 4 (Tex.1981); *Texas Cookie Co. v. Hendricks &*

*Peralta, Inc.,* 747 S.W.2d 873, 878 (Tex.App.—Corpus Christi 1988, writ denied). The court should not be required to pick through appellant's own tendered issues to construct an instruction to conform to an issue actually submitted; this is the responsibility of the party complaining that a necessary instruction is missing from the court's charge.

Even if this was a special issue that required its own question, the Taylors failed to properly present this for inclusion in the Charge. The failure to submit an issue is not ground for reversal unless its submission in substantially correct form has been requested in writing and tendered by the party complaining of the judgment. Tex. R. Civ. P. 278.

**B. There is factually sufficient evidence of Taylors' breach and the Hennys' mitigation costs and damage to credit reputation.**

Legally and factually sufficient evidence has been discussed and referenced all throughout this Response to Appellant's Brief, and the Appellee hereby incorporates those prior arguments and references to the records, *supra*, as though printed herein verbatim. There exists extensive testimony regarding the Hennys' costs of mitigation that resulted from the Taylors' breach and interference, as well as the Hennys' loss of credit reputation in Section III(B)-(C), *supra*.

## PRAYER

Damon and Adrienne A. Henny respectfully request that this Honorable Court affirm the Trial Court's Final Judgment of May 1, 2014 as it relates to the Hennys'

recovery, that this Honorable Court reverse and render relief consistent with the original, unanimous jury verdict in this case as to those issues presented in the Hennys' Cross-Appellant's Brief, including the reversal of the Order Granting Judgment Notwithstanding the Verdict and Order Granting Remittitur. The Hennys also pray for all other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

**THE CARTER LAW FIRM**

BY:     /s/ Eric G. Carter
        Eric G. Carter
        SBN:  03914500
        ecarter@carter-lawfirm.com
        Eric William Carter
        SBN: 24057797
        ewcarter@carter-lawfirm.com
        1811 Southmore Boulevard
        Houston, Texas  77004
        Tel:  (713) 227-0042
        Fax: (713) 227-7001

**ATTORNEYS FOR CROSS-APPELLANTS:  ADRIENNE A. HENNY and DAMON K. HENNY**

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because the brief contains 8,151 words, even including those parts which are exempted by Texas Rules of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface and type style requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font for text in the body and 12-point Garamond font for footnotes.

 /s/Eric G. Carter     
Eric G. Carter

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5 (b), (d) and (e), I hereby certify that a true and correct copy of the above and foregoing Appellees' Response to Brief of Appellants has been forwarded to counsel for Appellants, as listed below, by facsimile transmittal, US mail, E-Service, or hand delivery on this 28th day of January, 2015.

      /s/Eric G. Carter
      Eric G. Carter

***Attorney for Denise Taylor and Oscar Taylor:***
Douglas Pritchett, Jr.
Johnson, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002
Telephone: (713) 222-2323
Facsimile: (713) 222-2226
***Via Facsimile and Email***